## HILL v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10753.

Circuit Court of Appeals, Eighth Circuit.
March 16, 1937.

Francis D. Butler, of St. Paul, Minn. (Curtis C. Goodson, of St. Paul, Minn., on the brief), for petitioner.

Arnold Raum, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals. The sole question up for judgment herein is, whether the income from an irrevocable trust, used, pursuant to its terms to support the settlor's wife and maintain the family home in which both the settlor and his wife reside with several adult children, is taxable to such settlor as income. The Board of Tax Appeals held such income taxable as against petitioner, who thereupon sued out this petition for review.

The question for decision arose on the below facts: In December, 1917, petitioner, then residing with his wife and four children in St. Paul, Minn., created and duly executed five separate irrevocable trusts; one for each of his four children, all of whom were seemingly then infants, and one for his wife. In and by each of these trusts he conveyed to himself as trustee, and to his successor or successors, certain property and securities theretofore owned by him absolutely, and of the then approximate value of $800,000, and of the aggregate value of $4,000,000. The income from these several trusts was to be paid annually to the beneficiaries named therein respectively, for their support and maintenance. But the terms and effect of such trusts in favor of petitioner's children, are not relevant here, save as mere incidents indicating that they were not dependent for support on petitioner after reaching their respective majorities, which each of them did before the arising of the controversy here involved.

The provisions in the trust in favor of petitioner's wife, which alone are pertinent here, read thus:

"1. Out of the income of the trust estate, there shall be paid to my wife, Maud van Cortlandt Taylor Hill, so long as she shall live, for her own personal uses and purposes, the sum of Twelve Thousand Dollars ($12,000.00) per annum.

"2. So long as I shall live and my wife and I shall live together, the balance of the income of said trust estate shall be applied by the trustee or trustees to her maintenance and support, to the maintenance, upkeep and operation of the dwelling or dwellings in which she may from time to time reside, to the maintenance, support, traveling expenses of herself and her children, including expenses of servants, clothes, education of children, and other items of family expenses; provided, however, that no more than five-sixths of the expense of operation, upkeep and maintenance of any dwelling or establishment occupied or used by the Trustor in common with the members of his family shall be paid out of the income of the trust estate, it being contemplated that of such expense the Trustor shall provide at least one-sixth out of his own income and property, and no part of such income shall be applied to the use or benefit of the Trustor."

During the year 1930, petitioner lived with his wife and three adult, but unmarried children in the family residence in St. Paul. Each of the latter members of this family was often absent, in 1930, but when in St. Paul they lived with petitioner and his wife, their mother, as members of one family. In the year above named, the tax year involved herein, the disbursements for upkeep and maintenance of the family home of petitioner and his wife amounted in the aggregate to the sum of $49,499.17. Petitioner personally paid of the above disbursements $24,573.29, and the balance of $24,860.88, was paid by him as trustee, out of the income of the trust created by him for the support and maintenance of his wife and for the upkeep of a home for the family, as provided in clause 2, of the trust instrument quoted last above. Both the Commissioner of Internal Revenue and the Board of Tax Appeals were as forecast, of the view that said sum of $24,-860.88 was taxable to petitioner as income for the year 1930; petitioner is of the view that it was not. And the above are the facts, and the dispute last stated is, as indicated, the concrete matter up for judgment here.

Difficulty is encountered here, in limine, for that the parties do not agree upon any common ground on which to stage their respective legal controversies. The petitioner contends, that the case is referable for solution to the provisions of section 167 of the Revenue Act of 1928 (26 U.S.C.A. § 167 note), in force in the tax year of 1930, and the regulations made thereunder; while the respondent insists that alone the provisions of sections 22 and 24 of the Revenue Act of 1928 (26 U.S.C.A. §§ 22, 24 and notes), rule the case, as the two sections last above were construed in the case of Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 62, 80 L. Ed. 3, 101 A.L.R. 391.

Section 22, supra, defines gross income as including, " * * * gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

Section 24, supra, provides, so far as is relevant here, items of expense which are not deductible from net income and among such nondeductible items, we find. "Personal, living, or family expenses." Since section 22, supra, merely defines the many sources of gross income, and section 24, supra, simply provides that personal expenses, living expenses, and family expenses cannot be deducted from gross income in ascertaining net income to be taxed, we are constrained to the conclusion that the contention of respondent in this behalf involves a begging of the question, and is of negligible help in solving the actual question presented.

For the rule of law, which denies the right to tax the settlor in respect of income derived from an irrevocable trust, seems to us to be bottomed on the fact or assumption, at least, that such income does not come into, or pass from the hands of the settlor, but arises from the trust entity created, and proceeds from it di-

rectly to the cestui que trust, in whose hands it becomes taxable income, perforce the provisions of section 22, supra. In the instant case the income sought to be taxed was derived from an irrevocable trust; it passed into the hands of the settlor of the trust, petitioner here, who also fortuitously happened to be the trustee; he took it as trustee, and not as owner. If he had taken it as owner, then, of course, sections 22 and 24, supra, would apply; he would be taxable on it and the inquiry would be ended. But the inquiry here, we think, goes deeper.

This inquiry is, whether when this trust estate income came into the hands of petitioner he used it, or was permitted to use it, perforce the trust's provisions, in payment of his own legal obligations. It is only in the aspect, and to the extent, that section 22, supra, makes outgo, or use, the test and touchstone of income, that its provisions are relevant here. Specifically, section 22, goes so far into detail in defining gross income, as well-nigh to render construction unnecessary. Generally speaking, this section applies to and taxes income, qua income, all money and property coming into the hands of any person, which is to be used, or held by such person in absolute ownership, and to be either held, or used by such owner, as desire, whim, or legal obligation shall dictate, unhampered by the lawful claims or rights of any other person whomsoever. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916.

In the behavior and philosophy of the human race the norm of motivation to conduct is rarely constant. One person may spend thousands in contributing to educational or charitable purposes solely for the personal pleasure and gratification which the making of the gifts affords to him, while another may spend, or waste, according as it may be viewed, thousands in concrete efforts to ascertain which of two or more specimens of the genus equidæ shall demonstrably exhibit the greater comparative rapidity in passing from one given point to another given point. In either case, the money being spent by, is used for the benefit of, him who thus gets rid of it.

Section 167 of the Revenue Act of 1928 (26 U.S.C.A. § 167 note), in its language differs in no material way from section 167, of the Revenue Act of 1936 (26 U.S.C.A. § 167 and note). The departmental Regulations made thereunder follow the section closely. Said section so far as is here relevant reads thus: "Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, * * * such part of the income of the trust shall be included in computing the net income of the grantor."

The above section forbade, and a similar section of the existing statute forbids, under penalty of rendering such income taxable, the distribution, or the accumulation for future distribution, of any income from a trust estate, to the settlor thereof, whether such distribution be made alone by the settlor, or in conjunction with any other person not a beneficiary of the trust. Under its provisions a forbidden distribution occurs whenever the settlor of the trust distributes, or uses the income from the trust estate, in payment of his personal legal obligations. And indeed it is difficult to understand why such distribution is not also present, whenever the settlor of his own volition or wish goes further and uses such income to subserve his personal uses, whims, and desires in any behalf, as well as in providing, servants and shelter for adult children for whose support the settlor is no longer under any legal obligation. Though the ban of the statute is laid on the fact of distribution, it just as effectually covers the creation of trusts having the forbidden object or result.

While it seems difficult to find, either under section 22, supra, or under section 167, supra, any logical distinction arising from the question, as to the use to which the income was put, that is, as to whether it was devoted to the payment of legal obligations, or went to subserve the personal uses, pleasure, whims, or even vices of the spender, provided, it was actually used by him, our inquiry here in the case at bar does not take us so far afield.

Here in the instant case, the trust instrument provided for the payment annually to the wife of the settlor, so long as she should live the sum of $12,000 "for her own personal uses and purposes." This sum was paid from the trust estate income, and about it no question is herein raised. It is about the below provision that the instant dispute, rages, name-

ly, "So, long as I shall live and my wife and I shall live together, the balance of the income of said trust estate shall be applied by the trustee or trustees to her maintenance. and support, to the maintenance, upkeep and operation of the dwelling or dwellings in which she may from time to time reside, * * * including expenses of servants * * * and other items of family expenses." Omitted parts of the provision, or clause 2, in dispute, refer to the maintenance, support, traveling expenses of the wife and her children, their clothing and education. Since the items found in the record of expenses for 1930, include no outlay for traveling expenses, education, or clothing for the three adult children, and only intermittent support—home and food and service for them, hereafter briefly discussed—the importance of these latter provisions (elsewhere fully quoted herein) does not justify any extended reference to them, or warrant the use of space in further quotation of them.

Petitioner contends that income from an irrevocable trust, paid for the maintenance of a dwelling, as a home for himself and his family, can be taxed to the settlor of such trust only in case the money from the trust estate was used to discharge a legal obligation of such settlor, and that since in the case at bar the facts stipulated show that it was partly used as a place of shelter and a source of food for the adult children of the settlor, upon whom (because they were all adults, and because they had large independent means) no legal obligation for their support and maintenance rested, petitioner was not taxable. We are of opinion that this contention is too narrow. It is obviously true that when, in December, 1917, the trust estate was created, there was a legal obligation resting on the settlor to support, maintain, and educate these children, and so it is within the contention of petitioner that this obligation has fallen in, perforce the flux of time. So much may be conceded, if the matter were bottomed solely on a legal obligation to the children. Knutson v. Haugen, 191 Minn. 420, 254 N.W. 464.

■ But here the trust agreement provided for the "maintenance, upkeep and operation of the dwelling or dwellings in which she (the wife of the settlor) may from time to time reside," and this duty we think the settlor was by the law of the state of his domicile obligated to perform. It is, of course, elementary that at common law a husband was liable for *necessaries* furnished to his wife. What is included by the word necessaries, is often troublesome; but it was said in the case of Bergh v. Warner, 47 Minn. 250, 252, 50 N.W. 77, 78, 28 Am.St.Rep. 362, that, "The term 'necessaries,' in its legal sense, as applied to a wife, is not confined to articles of food and clothing required to sustain life or preserve decency, *but includes such articles of utility, or even ornament, as are suitable to maintain the wife according to the estate and rank of her husband."* (Italics ours.) And this is true, even though, as here, the wife has independent means, or even though the husband had furnished her with money to pay for such necessaries. Kosanke v. Kosanke, 137 Minn. 115, 162 N.W. 1060; Rotering v. Hibbard, 168 Minn. 502, 210 N.W. 395.

■ It is clearly to be inferred from the record, and the Board of Tax Appeals so found, that petitioner is a man of wealth, and the maintenance of a more or less elaborate establishment as a home for his wife and himself is in keeping with his estate and rank in life, and so the fact brings the situation in accord with the extent of the legal duty as defined in the above quotation from the Bergh Case, supra. It is now quite well settled that the income, even from an irrevocable trust estate, cannot be used by the settlor, in payment of obligations for which the settlor is by law personally liable. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 63, 80 L.Ed. 3, 101 A.L.R. 391; Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439. In the Douglas Case, supra, the obligation arose from a judgment for alimony in a decree of divorcement, and in the Burnet Case, supra, from the payment of premiums on insurance policies on the life of the settlor and in favor of beneficiaries who were dependents of the settlor, which was held to be income used by the settlor for his own benefit. Generally and as bearing on views suggested above by us, the Supreme Court in the Douglas Case, supra, said: "Nor are the provisions of the statutes (Revenue Act 1926, § 219 (h), 26 U.S.C.A. § 167, note; Revenue Act 1928, § 167, 26 U.S.C.A. § 167 note) defining instances in which the grantor remains taxable, as in case of certain reservations for his bene-

fit or provisions for the payment of premiums upon policies of insurance on his life, to be regarded as excluding instances not specified, where in contemplation of law the income remains in substance that of the grantor. No such exclusion is expressed and we see no ground for implying it."

The maintenance, operation, and upkeep of a dwelling as a home for a man and his wife connote something more than the mere food and shelter for the two spouses alone. It includes a place to which friends and the children and other relatives of the man and his wife may come and visit and be socially entertained from time to time. So much inexorable custom would seem to dictate. Hardly, we think, may it successfully be contended that the provisions of the trust instrument here under inquiry had in contemplation or held within their intendments that the wife of one occupying the rank and station of the petitioner should be required to unduly limit her friendly and social duties or to refuse to entertain her friends, children, or other relatives, or to resort to the expedient of taking them in only as paying guests. But to such reductio ad absurdum the facts and legal situation would otherwise seem to compel us.

We are of the opinion that the petition for review should be dismissed and the case affirmed, and so it is ordered.