## MAIRS v. REYNOLDS, Collector of Internal Revenue.

### No. 11894.

Circuit Court of Appeals, Eighth Circuit.

June 17, 1941.

---

858

Ira C. Oehler, of St. Paul, Minn., for appellant.

J. Louis Monarch, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Edward First, Sp. Assts. to the Atty. Gen., and Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

September 17, 1927, appellant, a resident of St. Paul, Minnesota, conveyed certain property to himself and his wife in trust for the benefit of his minor children. The trust agreement provided that: "After the payment of all expenses incident to the management of said trust, said trustees shall use the net income therefrom for the education and maintenance of the four children of said party of the first part, George Goodell Mairs, Robert Whitaker Mairs, Thomas Gardner Mairs, and Mary Anne Mairs".

If the income proved to be insufficient for the purposes of the trust, the trustees might use from time to time necessary parts of the principal, charging such amount to the beneficiary for whom it was used. No part of the income from the trust funds was used by appellant other than for the education of these four children; their support and maintenance otherwise was provided by appellant out of his own income. The birth date of George G. Mairs was April 27, 1914; of Robert W. Mairs, May 16, 1917; of Thomas G. Mairs, May 27, 1922; of Mary Anne Mairs, May 21, 1924.

"During the year 1934 George G. Mairs was attending Yale University; Robert W. Mairs and Thomas G. Mairs were attending St. Paul Academy; and Mary Anne Mairs was attending Summit School; St. Paul Academy and Summit School being located in St. Paul, Minnesota. All three schools are so-called private schools. In the year 1935 George G. Mairs attended Yale University, New Haven, Connecticut, Robert W. Mairs attended St. Paul Academy and Yale University, Thomas G. Mairs attended St. Paul Academy, and Mary Anne Mairs attended Summit School."

In the year 1934, the trustees expended for tuition and the education of appellant's children the total sum of $3,254.26; and for the year 1935, the total sum of $3,069.29. Such sums were held by the Commissioner of Internal Revenue to have been used for the purpose of satisfying a legal obligation of the appellant as father of the children and, therefore, subject to income tax against him. Such taxes were paid by appellant to prevent penalties and interest accrual, and suit was brought for refund. On trial the district court found as follows:

"That the sum of $3,254.26, paid during the year 1934, satisfied a legal obligation of the plaintiff and enabled him to enjoy such income.

"That the additional tax of $1,198.21, and interest of $197.80, collected from plaintiff for the year 1934 was legally and rightfully collected of plaintiff.

"That the sum of $3,069.29 paid during the year 1935 for the tuition and education of the plaintiff's children was paid to satisfy a legal obligation of the plaintiff and enabled him to enjoy such income.

"That the additional tax of $904.23 and interest of $104.01, paid by plaintiff for the year 1935 was legally and rightfully assessed and collected of plaintiff."

And judgment was entered accordingly. Hence this appeal. Appellant sued to recover the income taxes paid, and prosecutes this appeal upon two grounds:

"1. That no part of the trust income was ever used, and this is true of the years in question, to discharge a legal obligation of the plaintiff.

"2. If the court should hold there was a discharge of a legal obligation of plaintiff's by use of trust income in 1934 or 1935, then that the funds accumulated prior to January 1, 1934 were so used, and that no part of the 1934 or 1935 income was used."

In general, appellant's argument is to the effect that the common law imposed no obligation upon a father to educate a child, and that there is no Minnesota statute imposing such an obligation other than the requirement of Section 3080, Mason's Minnesota Statutes 1927, towit:

"3080. Children must attend school—When excused—Every child between eight and sixteen years of age shall attend a public school, or a private school, in each year during the entire time the public schools of the district in which the child resides are in session; provided, however, that no child shall be required to attend public school more than ten (10) months during any calendar year. In districts maintaining terms of unequal length in different public schools, this requirement shall be satisfied by attendance during the shorter term."

The contention, therefore, is that "Congress not having enacted a law imposing a tax liability based on a moral obligation, the commissioner cannot so impose a tax."

Appellant in brief and argument apparently seeks to restrict the legal obligation, which he deems to be essential to justify the imposition of the tax complained of, to such provisions of the Minnesota Statutes as Sections 3080, and 3083, Mason's Minnesota Statutes (1927) Vol. 1, C. 14, which do not cover the entire field of parental liability, but rather define the minimum amount of educational training necessary to avoid penal liabilities for neglect.

In our judgment such limitation falls far short of the measure of parental duty recognized by the general law, and by the public policy of the State of Minnesota in particular. That policy is convincingly, if somewhat indirectly, indicated in its statutes defining the powers and duties of guardians of minors. Mason's Minnesota Statutes, Sections 8933, 8935, and 8939, in which it is provided that such guardians, of whom the father and mother are the natural ones, shall have not only the power, but the duty, to pay out of the estate of the ward, "the reasonable charges of his support and education in a manner suited to his position in life and the value of his estate." This expression of public policy, if indirect, is none the less binding. "The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized." Holmes, Circuit Justice in Johnson v. United States, 1 Cir., 163 F. 30, 32, 18 L.R.A.,N.S., 1194. Compare Van Beeck v. Sabine Towing Co., 300 U.S. 342, 351, 57 S.Ct. 452, 81 L.Ed. 685, and Keifer & Keifer v. Reconstruction Finance Corporation and Regional Agricultural Credit Corporation, 306 U.S. 381, 397, 59 S.Ct. 516, 83 L.Ed. 784. But we are not compelled to rely solely upon indirect intimation of legislative policy, for the Supreme Court of Minnesota has announced in express terms that the law imposes upon a father an obligation to support and educate his minor children. Kraft v. Kraft, 70 Minn. 144, 72 N.W. 804; and Knutson v. Haugen, 191 Minn. 420, 254 N.W. 464. In the latter case the court said:

"The quasi contractual obligation imposed by law upon a father to support his minor child and to compensate others who, in his default, assume the duty to nurture and educate such child, places him in the same situation as if he had made an express contract to compensate, without specifying time of payment or termination of the arrangement."

In this case the father, as natural guardian, presumably selected the schools and college which he deemed appropriate for the education of his children in a manner suited to their position in life and his financial ability.

The same view is announced by this court in a Minnesota case in which Knutson v. Haugen, supra, is cited. Hill v. Commissioner, 8 Cir., 88 F.2d 941. In the last named case it was stipulated that certain of the children were then adult, and had large independent means, and it was argued that, because no legal obligation for their support then existed, petitioner was not taxable. But the court calling attention to the fact that, when the trust estate was created, there was a legal obligation resting on the settlor, held this contention to be too narrow for those issues. In the case at Bar this contention has no place. One of the minor children reached his majority in 1935, but there is no evidence as to when the expendi-

tures for his benefit were made in that year. Furthermore, the taxpayer does not raise this issue as to this minor, concerning which he fails to sustain the burden of proof incumbent upon him. Compare Helvering v. Mercantile-Commerce Bank & Trust Co., 8 Cir., 111 F.2d 224, and Commissioner v. Grosvenor, 2 Cir., 85 F. 2d 2.

■ After all we are not inexorably remitted to refinements of title in determining whether a statute arbitrarily attributes to appellant here a taxable interest in the income conferred by trust agreements upon his children. The transaction merely converts a parent with legal social obligations into a trustee clothed with the same obligations. The principles here involved have been settled, as we have thought conclusively, by the decision of the Supreme Court in Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439, and by analogy, prior thereto. While in that case insurance rather than education was involved, the underlying principle is the same.

Referring to the purpose of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 2 et seq., the Report of the Committee on Ways and Means of the House of Representatives said: "Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or its use for his benefit. The purpose of this subdivision of the bill is to stop this evasion."

Section 219(h) of the Act, therefore, provided: "Where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in paragraph (10) of subdivision (a) of section 214 [the exception having relation to trusts for charities]), such part of the income of the trust shall be included in computing the net income of the grantor."

And in Burnet v. Wells, 289 U.S. loc. cit. 680, 682, 53 S.Ct. loc. cit. 765, 77 L. Ed. 1439 the following among many apt expressions are found:

"Income permanently applied by the act of the taxpayer to the maintenance of contracts of insurance made in his name for the support of his dependents is income used for his benefit in such a sense and to such a degree that there is nothing arbitrary or tyrannical in taxing it as his.

\* \* \* \* \*

"The relation between the parties, the tendency of the transfer to give relief from obligations that are recognized as binding by normal men and women, will be facts to be considered."

This doctrine has since been consistently reannounced:

"We have held that income was received by a taxpayer, when, pursuant to a contract, a debt or other obligation was discharged by another for his benefit. The transaction was regarded as being the same in substance as if the money had been paid to the taxpayer and he had transmitted it to his creditor.

\* \* \* \* \*

"The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered." Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 62, 80 L.Ed. 3, 101 A.L.R. 391.

It is urged by appellee that, in creating the trust and directing its use for the education of his children, appellant procured and enjoyed an economic benefit of the income apart from the fact that his legal obligations were also being satisfied. Compare Helvering v. Horst, 311 U. S. 112, 61 S.Ct. 144, 85 L.Ed. ——, 131 A.L.R. 655, and Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. ——. In this we concur.

In view of the fact that the earnings in the year 1934 actually exceeded expenditures, and that, in such case, by the terms of the trust, the trustees were empowered to use parts of the principal, we do not think the fact that, in January and February of that year, disbursements exceeded income by a small amount is significant to sustain the second ground of appeal assigned. For the reasons herein stated the judgment below should be affirmed and it is so ordered.