**UNITED STATES v. PIERCE.**

No. 12423.

Circuit Court of Appeals, Eighth Circuit.

July 26, 1943.

---

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., and Victor E. Anderson, U.S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellant.

Guy Chase, of St. Paul, Minn. (Kellogg, Morgan, Chase, Carter & Headley, of St. Paul, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The facts controlling on this appeal are not disputed. The appellee, Elinore Mapes Pierce, by deed of trust executed March 7, 1935, transferred and delivered to her husband, Earle V. Pierce, as trustee, 6,000 voting trust certificates of the Cream of Wheat Corporation, with directions to pay and apply the net income of the trust estate solely and exclusively to and for religious, charitable, and educational purposes, with the intention on the part of the settlor, expressly declared in the trust instrument, of creating a public charity trust, as authorized by Chapter 180 of the Laws of Minnesota of 1927. The trust thus created was to continue to and including the 31st day of December, 1944, and, at the election of the settlor, for an additional term of five years, unless sooner terminated by the death of either the settlor or the trustee, or by the legal incapacity of the trustee.

430

By the terms of the trust instrument it was provided that in case of the resignation of the trustee he should be succeeded in office by the settlor or by her nominee, or, if the settlor should fail or decline to assume the duties of trustee or to appoint a successor-trustee, that the vacancy in the office should be filled by appointment by the district court of Hennepin County, Minnesota, upon the petition of the Attorney General of the State of Minnesota. At the termination of the trust, the principal of the trust estate reverted to the settlor, if living, and, if deceased, to her estate, but the undistributed income was required to be applied to the religious, charitable, and educational purposes for which the trust was created. There was an expressed prohibition against the revesting of the trust property in the settlor except upon termination of the trust, and against the distribution of any of its income to any organization, any part of the net income of which inured to the benefit of a private shareholder or which engaged substantially in propaganda or attempted to influence legislation.

The settlor reserved the right to alter the terms of the trust instrument only to "such extent and for such purposes as may hereafter appear reasonably necessary or advisable in order to fully carry out the religious, charitable and educational purposes" for which the trust was created, and to approve the properties or securities in which the trustee might invest or reinvest the principal of the trust estate. The latter of these reserved powers had not been exercised at the time of this suit, and the first only to amend the declared purpose of the trust to remove any question of its charitable character. Except as his powers were limited by the provision just stated, the trustee was given complete and absolute control of the trust property for the purposes of the trust. He was directed to take possession of and to manage and control the trust estate, collect the income and dividends thereon, invest and reinvest the trust estate. He was granted full power to sell or convey any property in the trust estate at such price, in such parcels, and upon such terms as to him might seem best; to exercise subscription rights in connection with any shares or securities forming part of the trust estate, or to sell such subscription rights as to him might seem most advantageous; and to participate in any reorganization of any corporation in which he held shares or securities.

The trustee was required to keep records and books of account, open at all times to inspection by the settlor or by the Attorney General of Minnesota.

Neither the settlor nor the trustee, her husband, at any time received directly or indirectly any part of the income of the trust estate, nor any benefit whatever from any institution to the use of which its income was distributed. There was no sale or other disposition of the corpus of the trust, except that in 1939 the voting trust certificates were surrendered by the trustee in exchange for certificates representing 6,000 shares of the capital stock of the Cream of Wheat Corporation. The trustee never at any time received nor made any charge for compensation for his services in his administration of the trust. The trustee was authorized to pay from the trust income the expense of administering the trust, but none was incurred, except one small charge by a bank for services performed. The trustee kept books of account showing income and disbursements, and kept the funds of the trust estate on deposit in a bank wholly separate and apart from the bank in which settlor and trustee maintained their respective bank accounts. The income of the trust estate was distributed in accordance with the directions and powers given the trustee in the trust instrument, to some 55 or 60 religious, charitable, or educational institutions. All of the trust income was distributed except relatively small sums retained for a working bank balance. The settlor never at any time exercised any control over the management of the trust estate, nor has she at any time influenced or attempted to influence the selection of beneficiaries of the trust.

The trust estate had a substantial income for the years 1935, 1936, and 1937. Appellee did not include this income in her income tax reports for the years mentioned. The Commissioner of Internal Revenue ruled that the income of the trust was attributable to the appellee, and, accordingly, assessed deficiencies in her income tax, which appellee paid. Her demand for refund being rejected, she brought this suit in the District Court to recover. On the facts, as above stated, the District Judge decided in favor of the appellee, holding that the trust in question was not revocable; that no part of it could revest in the settlor during the term of the trust; that no part of the income of the trust could be held or accumulated for distribu-

tion to the settlor; that the settlor had not received and was without the right to receive, directly or indirectly, any part of the income of the trust or any benefit therefrom; and that the settlor had neither dominion or control over the trust estate or its income, nor the legal right to such dominion or control.

The sole contention of the United States for reversal is that, under the evidence, the appellee remained the owner of the trust estate and was, therefore, taxable upon the income received by the trust under sections 22(a) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Acts, pages 669, 825.

In determining whether the income of a trust is taxable to the settlor, technical considerations of the law of property and trusts must be disregarded. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Commissioner v. Lamont, 2 Cir., 127 F.2d 875; Morsman v. Commissioner, 8 Cir., 90 F.2d 18, 113 A.L.R. 441. We look to the local law to determine the validity and character of a trust, and the nature and extent of the interests created by the trust instrument. Blair v. Commissioner, 300 U.S. 5, 9, 57 S.Ct. 330, 81 L.Ed. 465. "State law creates legal interests and rights. The Federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585. The legal interests and rights created by the trust instrument involved here are controlled by the law of Minnesota where the instrument was executed, where the settlor and trustee reside, and where the trust estate was delivered and is held. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 144, 145, 87 L.Ed. ——.

"Economic gain realized or realizable by the taxpayer is necessary to produce a taxable income under our statutory scheme. That gain need not be collected by the taxpayer. He may give away the right to receive it as was done in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L. Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 125, 61 S.Ct. 149, 150, 85 L.Ed. 81, and Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. * * * The 'non-material satisfactions' (gifts-contributions) of a donor are not taxable as income." Helvering v. Stuart, supra, 317 U.S. 154, 63 S.Ct. at page 148, 87 L.Ed. ——. The sum of the holdings of all the cases is that for purposes of taxa-

tion income is attributable to the person entitled to receive it, although he assigns his right in advance of realization, and although, in the case of income derived from the ownership of property, he transfers the property producing the income to another as trustee or agent, in either case retaining all the practical benefits of ownership.

The difficulty in cases like the one here lies, not in the determination of the controlling principles, but in the application of those principles to varying facts and circumstances arising in particular cases. In applying the statutory definition of gross income, contained in the sections of the controlling revenue acts, to the income of a trust, the rights granted to the trustee and the beneficiary, the rights retained by the settlor, his control over the principal of the trust or the absence of control, and all similar considerations and circumstances are relevant, though no one fact is normally decisive. Helvering v. Clifford, supra. In the nature of things, the decision of the question in each case depends upon its own peculiar facts, and the ultimate question of whether a settlor remains the owner of the trust estate so that its income for any given year must be attributed to him is a question of law, a legal conclusion to be drawn from all the relevant facts and surrounding circumstances present in a given case. The answer to the question for decision here depends upon an analysis of the terms of the particular trust involved and the circumstances attendant on its creation and operation. McKnight v. Commissioner, 8 Cir., 123 F.2d 240; United States v. Anderson, 6 Cir., 132 F.2d 98; Helvering v. Bok, 3 Cir., 132 F.2d 365.

We think the controlling relevant facts in the case before us compel the conclusion reached by the District Court. The trust which appellee created here was not a mere channel for the application of her income to the discharge of obligations owed by her, as was the case in Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391. The settlor was under no obligation of any character to the beneficiaries of the trust. The trust was not revocable by the settlor, as was the case in Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. Here the settlor neither realized economic gain from the operation of the trust, nor was such gain realizable by her. In the operation of the trust, neither the settlor nor the trustee, her husband, could legally receive economic

benefit from the trust estate. The settlor reserved no right to change named beneficiaries of a trust, as was done in Sanford's Estate v. Commissioner, 308 U.S. 39, 60 S. Ct. 51, 84 L.Ed. 20. The trust was, therefore, not a mere gift of income, the right to the realization of which settlor had acquired at the time of the gift, as was the case in Helvering v. Horst, Harrison v. Schaffner, and Helvering v. Eubank, supra. Moreover, by express provision of the Minnesota law, a trust, upon the conditions and for the purposes expressed in the instrument involved here, is declared to be valid. Minnesota Statutes, 1941, § 501.12; In re Estate of Lundquist, 193 Minn. 474, 259 N.W. 9. The Minnesota statute makes the Attorney General of the State the attorney for the beneficiaries of a public charity trust created under the section of the statute cited, and expressly directs him to see that the purposes of the trusts are executed in accordance with their interests. The statute may be said to be a legislative recognition of the public interest in trusts of this character adverse to the settlor, in the event of an attempt by the settlor to control the corpus of the trust in a manner contrary to the purpose expressed in the instrument. Finally, the trust here was not a mere temporary allocation of family income among the members of an intimate family group, Helvering v. Clifford, supra, nor did the transaction here serve merely to convert a settlor, with legal obligations, into a trustee, clothed with the same obligations, as was the situation in Mairs v. Reynolds, 8 Cir., 120 F.2d 857, 860. The difference in the relevant facts in this case and the cases relied on by the appellant is substantial and decisive.

The term of the trust was nearly ten years, subject only to prior termination by events which were beyond the settlor's control, and which might not occur within the term as originally fixed or as later extended. The term of the trust was not so short, taken alone or in connection with other circumstances in the case, as to compel the inference that the settlor had not parted with the beneficial ownership of the trust principal. Cf. Commissioner v. Lamont, supra; Commissioner v. Chamberlain, 2 Cir., 121 F.2d 765; Helvering v. Bok, supra. The right reserved by the settlor to approve the securities in which the trustee might invest the trust principal was retained to protect her right of reversion, and had nothing to do with the operation of the trust. The right of succession of the settlor to the office of trustee, if exercised, could not change the terms of the trust nor alter the relative obligations of settlor and trustee created by the trust instrument.

In determining whether settlor had parted with the ownership of the trust estate within the meaning of the federal revenue acts, importance has been attributed in some cases to the fact that the trustee and settlor were husband and wife, living in amity in the same household, Helvering v. Elias and Elias v. Helvering, 2 Cir., 122 F.2d 171, but in these cases the income of the trust estate was distributed to the children of the settlor and trustee to whom the settlor and trustee owed the same obligation before the trust was created as they did afterwards. In the present case the record discloses that the trustee was a man of wide experience in important capacities in charitable, religious, and educational institutions of the kind for which the trust was created. From this fact, the reasonable inference is that the trustee was appointed because of his ability to administer the trust in accordance with its purpose without aid or direction of the settlor or others. Moreover, the uncontradicted evidence is that the settlor never attempted in any instance to manage or control the trust estate in order to direct the disposition of its income. Nor do we think it important in this case that one of the motives prompting the creation of the trust may have been the diminution of the settlor's tax liability on charitable gifts which she continued to make in large amounts after the creation of the trust.

The judgment of the District Court is affirmed.

WOODROUGH, Circuit Judge (dissenting).

The peculiar facts of this case seem to me to sustain the tax. The federal law requires income tax to be paid notwithstanding the income is given away in charity, and neither State laws nor mere devices of taxpayers can override the will of Congress. That will must be carried out by the federal courts without respect to persons. Here the taxpayer and her husband, acting with one mind in complete marital unity, had long been in the habit of giving away more than the fifteen percent of her income which is exempted from tax. The selection of the objects of her bounty and ap-

portionment of the money were the joint concern and interest of the wife and husband, effected by mutual trust and confidence and exemplary marital harmony abiding for years. The taxpayer intended to continue to make the same use of her income money but to try to save the tax imposed by the government. Though she transferred her anticipated income to her husband as trustee, and in form empowered him to give it away in charity at his discretion, and accounts were kept purporting to show that he executed the trust in accord with its terms, the undisputed evidence is clear that in the tax years in question, following the transfer, the family of husband and wife continued to give away the money exactly as before the trust was devised. Though the money was distributed to some fifty odd recipients in different amounts, no single instance was pointed out where the husband made the gift on his individual determination opposed to his wife's. On the contrary, they "conferred" and the decisions were mutual. Before the trust transfer she exercised her rights of ownership by giving in conference and concert with her husband, and afterwards she had identically the same enjoyment of the income.

It a taxpayer makes a trust transfer upon effective secret understanding that it is a sham not to be acted on, an assertion of tax benefit under it is obviously a fraud on the government. Here there need be no talk of fraud because there was no secrecy of understanding. But the sham character of the transfer here appears manifest in the open husband and wife relationship of the parties before the world, the nature of the transaction and comparison of their philanthropic activities before and after the trust transfer. The wife's agreement to substitute entirely the husband's judgment for her own in matters as personal to her as her customary habitual gifts to the poor was exactly analogous to the promise to obey in the wedding ceremony.

Most trusts create interests in other designated parties besides the trustor and trustee. But this one did not, and the wife knew and, as shown by the events, rightly counted on the fact that it would not make any difference in the substance of affairs how the Reverend Mr. Earle V. Pierce was designated. He would still be her husband and no mere designation of him would affect family decision. Looking at the reali-

ties, when the giving or withholding of a donation to a suppliant for some of the wife's money came up in this family, any one knows that what the trust document said about the husband's powers would be the last thing in the world to figure in the outcome.

The Minnesota law legalizing trusts to indefinite charities and empowering the Attorney General to prevent failure of such trusts seems to me irrelevant. It was no part of the intent of this sham trust that it should fail for want of application of the funds. On the contrary, the taxpayer's fixed intention to keep on, with her husband's help, giving away her income to charity is beyond all doubt. She enjoyed her substantial ownership of her income in that way, and under the law she ought to pay a tax to her government in respect to it.