Emerson R. Miller and Mary McClure Miller v. Commissioner.
Miller v. Commissioner
Docket No. 83723.
United States Tax Court
T.C. Memo 1960-267; 1960 Tax Ct. Memo LEXIS 24; 19 T.C.M. (CCH) 1487; T.C.M. (RIA) 60267; December 12, 1960
*24 1. Held, contributions to an irrevocable trust, the funds of which must ultimately go to charities described in section 170(c), I.R.C. 1954, are "for the use of" such charities and are deductible under section 170. 2. Held, the income of an irrevocable trust, created for the purpose of receiving funds ultimately to benefit charities, over which the settlor exercised no administrative powers except in a fiduciary capacity, had no reversionary interest, had no power to alter or amend, and was prohibited from dealing with the trust individually, is not taxable to the settlor. Roger K. Powell, Esq., 17 South High Street, Columbus, Ohio, for the petitioners. Vernon R. Balmes, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax for the years and in the amounts as follows: Year
Amount
1955
$8,748.03
1956
7,083.01
The issues are whether income received by petitioner Emerson R. Miller, in his capacity as trustee, is includible in petitioners' individual income for the years 1955 and 1956, and whether petitioners are entitled to deduct amounts contributed to a certain trust under section 170, Internal Revenue Code of 1954. *25 Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Emerson R. Miller, hereinafter sometimes referred to as Miller, and Mary McClure Miller, hereinafter sometimes referred to as Mary, petitioners herein, are husband and wife, residing in Newark, Ohio. They filed joint income tax returns with the district director of internal revenue at Columbus, Ohio, for the years 1955 and 1956. Miller orally settled a trust (known as The William E. Miller and Annie S. Miller Memorial Foundation) on December 31, 1952, which trust was reduced to writing on May 21, 1953. The preamble of the instrument contained, inter alia, the following language: WHEREAS the said Emerson R. Miller has heretofore on December 31, 1952 created, and now desires by this Declaration of Trust to witness the prior creation of, a new and separate trust, irrevocable and eleemosynary in nature and to be devoted entirely both as to principal and income to the promotion of the welfare of citizens of Newark, Ohio * * *. * * *
NOW THEREFORE the said Emerson R. Miller hereby declares that he, as Trustee of a certain irrevocable trust created on December 31, 1952, holds the corpus of said *26 trust together with any additions which may hereafter be made thereto by him or by others, solely and irrevocably for the use of charitable, educational, scientific, religious or philanthropic organizations of every kind and nature situate in and about the City of Newark, Ohio, or contributing materially to the welfare of the citizens of such city, and for the following uses and purposes: * * * The "uses and purposes" portion of the indenture contained the following paragraph: The Trustee and any successor trust shall hold the trust estate, shall manage the same and collect the income therefrom, and after the payment of all necessary expenses in connection with such management shall in his discretion pay over and distribute the same to or apply it to the use and benefit of any public or private organization described in the preamble hereto, such organization to be selected by the trustee as in his sound judgment he may from time to time deem most worthy of such distribution, payment or application, and his selection in writing of the organization or organizations to receive any future distributions of income shall be binding upon any successor trustee unless an election shall have *27 been made to accumulate such income for a definite capital expenditure as hereinafter provided; or he may accumulate the said income for a period of not to exceed three (3) years except under the following provisions: * * *
If it was decided to accumulate for a period greater than three years, the instrument required that written notice of such fact and the name of a designated charity be supplied to the Attorney General of the State of Ohio. In any event, the trustee could not accumulate for longer than 25 years. Except as limited by the purposes of the trust, Miller, as trustee, was given complete administrative control over the trust property. He was directed to take possession of and to manage and control the trust estate, collect the income and dividends thereon, invest and reinvest the trust estate. He was granted full power to sell or convey any property in the trust estate at such price and upon such terms as to him might seem best; to issue proxies or vote the stock of the estate; to compromise and adjust all claims upon terms he deemed best for the beneficiaries, and to participate in any reorganization of any corporation in which he held shares or securities. Miller was *28 denied the power to deal with himself individually. The trust was irrevocable and the settlor retained no powers to alter or change any provision of the instrument. May was named the successor trustee. Stock valued at $6,451.25 was initially placed in trust. Additional stock was transferred to the trust in the years 1954 through 1959. During 1955 and 1956, stock with a value of $14,407 and $7,250 was transferred by Miller to the trust. The certificates evidencing ownership were listed in the name of Miller, as trustee, and he maintained a brokerage account under similar title. The investments of the trust yielded dividend income of $2,404.25 in 1955 and $2,738.32 in 1956. Miller accumulated income totalling $16,013.83, which amount was held on bank deposit. This sum was accumulated since 1953. In so acting, Miller did not notify the Attorney General of Ohio, as required by the instrument. It was Miller's intention to accumulate funds until such time as the amount would permit the undertaking of a major charitable project, such as a children's clinic. For that reason, no major contribution from the trust was made until March 1960, at which time a donation of $10,000 was made to a perpetual *29 scholarship fund of Denison University. In February 1955 the Chief, Pensions and Exempt Organizations Branch of the Internal Revenue Service, declined to grant tax exempt status under section 501 of the Internal Revenue Code of 1954, to the trust. In April 1958 the taxpayer was notified by the Chief, Exempt Organizations Branch, Washington, D.C., that the trust was not organized and operated so as to come within the scope of section 501(c)(3) of the 1954 Code. On December 24, 1957, the Ohio State Board of Tax Appeals ruled that the stock initially contributed ($6,451.25) to the trust was held by Miller, as trustee for a charitable trust, and should not be included as his personal property for state tax purposes. The trust here under examination was organized and operated exclusively for charitable purposes. Opinion VAN FOSSAN, Judge: The first issue is whether petitioners are entitled to deduct sums contributed to a trust created by Miller allegedly for charitable purposes. The second issue is whether income earned by securities held by that trust and received by Miller in his capacity as trustee is taxable to petitioners individually. The trust instrument states that it was created *30 "solely and irrevocably for the use of charitable, educational, scientific, religious or philanthropic organizations of every kind and nature situate in and about the City of Newark, Ohio, or contributing materially to the welfare of the citizens of such city." At first glance the purposes of this trust appear to be those enumerated in section 170(c) of the Internal Revenue Code of 1954. [1]
The respondent, however, argues that the clause "or contributing * * * to the welfare of the citizens" widens the purposes of the trust so that it is not devoted "exclusively" to the charitable purposes set forth in section 170(c). Such being the case, respondent contends that contributions to this "general" trust are not deductible under section 170. Without engaging in a labored discussion of semantics, in our opinion the words in the context of this instrument were intended to and do, in fact, connote no more than the customary charitable or public purpose. Cf. Isabel Peters, 21 T.C. 55. While we are not controlled on this question by the law of the State of Ohio, the state from which this *31 instrument draws its force, we think that law important to cast light on the settlor's intent and purpose and to determine the validity and character of this trust. United States v. Pierce, 137 F. 2d 428 (C.A. 8). As we view the Ohio law, that state would treat this trust as a "charitable trust" and would not alter such status because of the inclusion of the word "welfare." [2]Ohio Rev. Code Ann., sec. 109.23. The Ohio Board of Tax Appeals' ruling, which appears to have been contested on hearing, that this was a charitable trust for Ohio State tax purposes is entitled to weight in our deliberations. [3] *32 Cf. George N. Spiva, 43 B.T.A. 1174; Joseph Edwards Phillips, Executor, et al., 7 B.T.A. 1054. Respondent takes the position that even if this trust were initially organized for charitable purposes, it was not so managed or treated by Miller. In support, respondent points to the fact that no major contribution was made from the fund until a few days prior to the trial of this case. On the other hand, Miller testified that the trust was created for purely charitable purposes and that the accumulation was to the end of raising a sufficient amount to undertake a major charitable project. The contribution of $10,000 in March 1960 was made to a perpetual scholarship fund of Denison University. In rebuttal, respondent proffered the records of convictions of Miller for filing false and fraudulent tax returns with the State of Ohio for the purpose of impeaching his truthfulness and veracity. We initially declined to accept such offer, but on further reflection we deem such exhibits admissible, [4] and have taken them into account in our consideration. We have thoroughly considered the testimony and exhibits, but we fail to find any support *33 for the respondent's conclusion that this trust was conducted for other than charitable purposes. The fact of accumulating income does not change this view. We are convinced that such accumulation was toward a charitable end. For a trust or foundation to be charitable in nature, it is not required to make contributions constantly during its existence. The instrument in issue permitted such accumulations. Miller testified that he made minor contributions from the trust during the intervening years. Considering the record as a whole, and particularly the trust instrument, Miller's testimony, the $10,000 gift for a scholarship fund, and the minor contributions, as indicated in our findings of fact, we hold that the trust was organized and operated exclusively for charitable purposes. That this trust did not qualify as tax exempt under one or the other of the subsections of section 501 is not determinative of the deductibility of contributions thereto under section u70. Isabel Peters, supra; John Danz, 18 T.C. 454, affd. 231 F. 2d 673 (C.A. 9), certiorari denied 352 U.S. 828. The Code provision alluded to lay down but one criterion, i.e., that the trust in fact be organized and operated *34 exclusively for charitable purposes. We have found this trust to be so organized and operated. As we explained in John Danz, supra, the fact that this was a "feeder" trust makes no difference as to deductibility in view of the use of the words "for the use of" in section 170(c), as in section 23(o) of the Internal Revenue Code of 1939. The respondent agrees with this position. See acquiescence in John Danz, 1952-2 C.B. 1; Rev. Rul. 194, 1953-2 C.B. 128; Rev. Rul. 57-562, 1957-2 C.B. 159. It follows, therefore, that respondent erred in disallowing the contributions to the trust as charitable contributions. John Danz, supra; Isabel Peters, supra. Respondent contends that Code sections 671 through 678 are applicable to these facts and for that reason the income earned by the trust corpus is properly taxed to petitioners in their individual capacity. Those sections tax the income of the trust to the settlor if he maintains certain prohibited ties or connections with a trust. Apparently as symptomatic of this dominion and control to deal with the trust as Miller saw fit, respondent points to Miller's failure to file with the Attorney General of Ohio the notice that he intended *35 to accumulate the income, and the actual accumulation for a number of years. Respondent also relies upon Miller's failure to specify, in the indenture, a successor trustee to Mary. We have already discussed and discounted the matter of the accumulation. As to the requirement of filing of notice of intention to accumulate, we think it was an administrative act and that a failure to comply therewith would not be taken under Ohio law to destroy the trust in view of the permission contained in the instrument to accumulate for 25 years. In any event, such failure is not indicative of a wholesale disregard of the terms of the trust by Miller. The designation of a particular charity, as required if funds were to be accumulated, could not be complied with since it had not yet been chosen with any degree of finality. The grantor's failure to appoint a second successor trustee for this charitable trust is not regarded as an impediment to the legal existence of the trust. IV Scott, Trusts, p. 2748 (2d ed., 1956). We do not consider this failure as evidence that Miller never intended to conduct the trust in issue as a charitable trust. Petitioners had no reversionary interest in the trust. It *36 was irrevocable and not subject to alteration or amendment. Although Miller, through his position as trustee, could select the charity to receive the contribution, section 674(b)(4) carves out an exception for this type of situation. Miller was forbidden to deal with himself individually. Whatever powers Miller had were given to him and held by him as trustee and fiduciary. None of the income could be applied to his personal benefit. None of the stock held by the trust was ever sold and there is no suggestion that Miller dealt with the trust other than within the ambit of his fiduciary capacity. In short, the sections relied upon by respondent are not applicable to the instant facts. This trust was registered as a charitable trust with the Attorney General of Ohio, as required by the statutes of that state. The Attorney General exercises wide control over the administration of such trusts. Ohio Rev. Code Ann., secs. 109.23-109.31, 109.99. We are unable to conclude, in view of the restrictions of the instrument and the supervisory and policing control of the Attorney General, that petitioners could have applied this trust in any manner to their personal benefit. See Klapp and Wertz, *37 "Supervision of Charitable Trusts in Ohio - The Ohio Charitable Trusts Act," 18 Ohio St. Bar J. 181. Without further discussion, we view this case as being controlled by United States v. Pierce, supra; John Danz, supra; and Herbert T. Cherry, 3 T.C. 1171, and hold that the income from the corpus of the trust was not taxable to petitioners individually. Decision will be entered for the petitioners. Footnotes
1. Unless otherwise stated, all references to sections of the Internal Revenue Code are to the 1954 Code.↩
2. American Issue Pub. Co. v. Evatt, 137 Ohio St. 264, 28 N.E. 2d 613↩: "'Charity' has been broadly defined as that which benefits mankind and betters its condition. * * *." 3. Although the Ohio Board of Tax Appeals is not a court in the strict sense of the word, it does exercise judicial functions and is constituted and charged with duties much the same as this Court. The Board's ruling is final unless an appeal is taken in the manner provided by statute. See Ohio Rev. Code Ann., secs. 5703.01-5703.04, 5717.01-5717.04↩.
4. The records of convictions were marked for identification (Respondent's exhibits E through I) and enclosed with the regular exhibits.↩