## VAN BEECK, ADMINISTRATOR, *v.* SABINE TOWING CO., INC., ET AL.

No. 460. Argued February 5, 8, 1937.—Decided March 1, 1937.

*Mr. H. C. Hughes,* with whom *Mr. M. G. Adams* was on the brief, for petitioner.

*Mr. M. A. Grace* for respondents.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The Merchant Marine Act of 1920 (June 5, 1920, c. 250, § 33, 41 Stat. 1007; 46 U. S. C. § 688) gives a cause of action for damages to the personal representative of a seaman who has suffered death in the course of his employment by reason of his employer's negligence. The question is whether the liability abates where the beneficiary of the cause of action, in this case the mother of the seaman, dies during the pendency of a suit in her behalf.

The steam tow-boat, Edgar F. Coney, sank on January 28, 1930, with the loss of all on board. The respondent, Sabine Towing Company, Inc., the owner of the boat, filed a libel in a United States District Court in Texas for the limitation of liability. In that proceeding claims for damages were filed by the personal representatives of several members of the crew. Among such claims was one for the pecuniary damage suffered through the death of the second mate of the vessel, Edward C. Van Beeck. He died unmarried, leaving a mother and several brothers. There being neither wife nor child nor father, the mother was the sole beneficiary of the statutory cause of action. This results from the provisions of the Employers' Liability Act (45 U. S. C. § 51), governing injuries to railway employees, which is made applicable by the Merchant Marine Act in case of injuries to seamen. Cf. *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 376. The mother was appointed administratrix of her son's estate, and acting as such administratrix filed her claim for damages.

She died in July 1931, and thereupon the petitioner, a brother of the dead seaman, succeeded to her office by appointment duly made, and was substituted as claimant in the pending suit. In that suit a Commissioner reported that the mother had suffered loss up to the time of her death in the sum of $700, and that there should be an award of that amount for the use of her estate. The District Court dismissed the claim on the ground that at her death the liability abated, and the Court of Appeals for the Fifth Circuit affirmed the dismissal. 85 F. (2d) 478. To settle the meaning of an important act of Congress, we granted certiorari.

The statutory cause of action to recover damages for death ushered in a new policy and broke with old traditions. Its meaning is likely to be misread if shreds of the discarded policy are treated as still clinging to it and narrowing its scope. The case of *Higgins* v. *Butcher,* Noy 18; Yelv. 89, which arose in the King's Bench in 1606, is the starting point of the rule, long accepted in our law, though at times with mutterings of disapproval,[1] that in an action of tort damages are not recoverable by any one for the death of a human being.[2] The rule is often viewed as a derivative of the formula *"actio personalis moritur cum persona,"* a maxim which "is one of some antiquity," though "its origin is obscure and post-classical."[3] Even in classical times, however, the Roman law enforced the principle that "no action of an essen-

[1] Tiffany, Death by Wrongful Act, §§ 3, 6–11; Pollock, Torts, 13th ed., pp. 62–65.

[2] *Baker* v. *Bolton,* 1 Camp. 493; *Insurance Co.* v. *Brame,* 95 U. S. 754, 756; *Lindgren* v. *United States,* 281 U. S. 38, 47; *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 371; Pollock, Torts, *supra;* Tiffany, *supra.*

[3] Bowen and Fry, L. J. J., *Finlay* v. *Chirney,* (1888) 20 Q. B. D. 494, 502; Pollock, *supra;* Goudy, Two Ancient Brocards, in Essays in Legal History, ed. by Vinogradoff, p. 215; Radin, Anglo-American Legal History, p. 413.

tially penal character could be commenced after the death of the person responsible for the injury."[4] Vengeance, though permissible during life, was not to "reach beyond the grave."[5] There was also an accepted doctrine that no money value could be put on the life of a freeman.[6] The post-classical maxim, taken up by Coke and his successors,[7] gave a new currency to these teachings of the Digest, and, it seems, a new extension.[8] But the denial of a cause of action for wrongs producing death has been ascribed to other sources also. The explanation has been found at times in the common law notion that trespass as a civil wrong is drowned in a felony.[9] As to the adequacy of this explanation grave doubt has been expressed.[10] None the less, the rule as to felony merger seems to have coalesced, even if in a confused way, with the rule as to abatement,[11] and the effect of the two in combination was to fasten upon the law a doctrine which it took a series of statutes to dislodge.

[4] Fifoot, English Law and Its Background, pp. 167, 168. Cf. Buckland, A Text-Book of Roman Law, 2nd ed., p. 685; Buckland & McNair, Roman Law and Common Law, p. 288; Allen, Law in the Making, 2nd ed., pp. 196–198.

[5] Fifoot, *supra;* Goudy, *supra,* p. 218.

[6] Fifoot, *supra;* Goudy, *supra,* p. 218, citing Dig. IX, 3, 3; IX, 3, 1, § 5: *"Liberum corpus nullam recipit aestimationem."*

[7] *Pinchon's Case,* 9 Rep. 86 b; Goudy, *supra,* p. 226; Allen, *supra.*

[8] Holdsworth, A History of English Law, Vol. 3, pp. 333, 334; Vol. 2, p. 363.

[9] *Admiralty Commissioners* v. *S. S. Amerika,* [1917] A. C. 38, 43, 47, 60.

[10] Holdsworth, *supra,* Vol. 3, Appendix VIII; also Vol. 3, pp. 332–336. Cf. Pollock, *supra;* *Osborn* v. *Gillett,* L. R. 8 Ex. 88, 96, 97; *Carey* v. *Berkshire R. Co.,* 1 Cush. 475, 477, 478; *Shields* v. *Yonge,* 15 Ga. 349, 353; *Hyatt* v. *Adams,* 16 Mich. 180, 187, 188; *Grosso* v. *D. L. & W. R. Co.,* 50 N. J. L. 317, 320; 13 Atl. 233.

[11] *Higgins* v. *Butcher, supra; Admiralty Commissioners* v. *S. S. Amerika, supra;* Tiffany, *supra;* Holdsworth, *supra,* Vol. 3, pp. 332–336.

The adoption of Lord Campbell's Act in 1846 (9 & 10 Vict. c. 93), giving an action to the executor for the use of wife, husband, parent or child, marks the dawn of a new era. In this country, statutes substantially the same in tenor followed in quick succession in one state after another, till today there is not a state of the Union in which a remedy is lacking.[12] Congress joined in the procession, first with the Employers' Liability Act for railway employees (45 U. S. C. §§ 51, 59), next with the Merchant Marine Act of 1920 for seamen and their survivors (46 U. S. C. § 688), and again with an act of the same year (March 30, 1920, c. 111, §§ 1, 2, 41 Stat. 537; 46 U. S. C. §§ 761, 762), not limited to seamen, which states the legal consequences of death upon the high seas.

As already pointed out, the personal representative of a seaman laying claim to damages under the Merchant Marine Act is to have the benefit of "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees." 46 U. S. C. § 688. The statutes thus referred to as a standard display a double aspect. One of these is visible in the Employers' Liability Act as it stood when first enacted in 1908. Under the law as then in force (April 22, 1908, c. 149, § 1, 35 Stat. 65; 45 U. S. C. § 51) the personal representative does not step into the shoes of the employee, recovering the damages that would have been his if he had lived. On the contrary, by § 1 of the statute a new cause of action is created for the benefit of survivors or dependents of designated classes, the recovery being limited to the losses sustained by them as contrasted with any losses sustained by the decedent.[13]

---

[12] Tiffany, *supra*, pp. xviii to xliii; cf. 44 Harv. L. Rev. 980.

[13] *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 68; *Gulf, Colorado & Santa Fe Ry. Co.* v. *McGinnis*, 228 U. S. 173, 175; *North Carolina R. Co.* v. *Zachary*, 232 U. S. 248, 256–257; *Chesapeake & Ohio Ry. Co.* v. *Kelly*, 241 U. S. 485, 489.

However, with the adoption of an amendment in 1910 (April 5, 1910, c. 143, § 2, 36 Stat. 291; 45 U. S. C. § 59) a new aspect of the statute emerges into view. Section 2 as then enacted continues any cause of action belonging to the decedent, without abrogating or diminishing the then existing cause of action for the use of his survivors.[14] "Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death." [15] It is loss of this last order, and no other, that is the subject of the present suit. So far as the record shows, the seaman died at once upon the sinking of the vessel. In any event there is no claim that his injuries were not immediately fatal.[16] To what extent the present problem would be altered, if intermediate loss and suffering had been made the basis of a recovery, we have no occasion to consider. Our decision must be limited to the necessities of the case before us.

Viewing the cause of action as one to compensate a mother for the pecuniary loss caused to her by the negligent killing of her son, we think the mother's death does not abate the suit, but that the administrator may continue it, for the recovery of her loss up to the moment of her death, though not for anything thereafter,[17] the damages when collected to be paid to her estate. Such is the rule in many of the state courts in which like statutes are in force. It is the rule in New York, in Pennsylvania, in New Jersey, in Oklahoma, in Georgia, in

[14] St. Louis, I. M. & S. Ry. Co. v. Craft, 237 U. S. 648, 657; Great Northern Ry. Co. v. Capital Trust Co., 242 U. S. 144, 147.

[15] St. Louis, I. M. & S. Ry. Co. v. Craft, supra, p. 658.

[16] Cf. Great Northern Ry. Co. v. Capital Trust Co., supra.

[17] Cooper v. Shore Electric Co., 63 N. J. L. 558; 44 Atl. 633; Sider v. General Electric Co., 238 N. Y. 64; 143 N. E. 792.

Kentucky, in North Carolina, and under statutes somewhat different in Connecticut and Massachusetts.[18] It is also the rule in the lower federal courts, applying the statute of Illinois as well as the Act of Congress in respect of death upon the high seas.[19] These cases take the ground that "the damages awarded for the negligent act are such as result to the property rights of the person or persons for whose benefit the cause of action was created."[20] Indeed, even at common law, since statutes adopted in the reign of Edward III (4 Edw. III, c. 7; 25 Edw. III, stat. 5, c. 5), which were extended beyond their letter by an equitable construction, an administrator might recover where the wrong was an injury to property and not an injury to the person.[21] The general rule was said to be that "executors and administrators are the representatives of the temporal property, that is, the debts and goods of the deceased, but not of their wrongs, except where those wrongs operate to the temporal injury of their personal estate."[22] When we re-

---

[18] *Meekin* v. *Brooklyn Heights R. Co.*, 164 N. Y. 145; 58 N. E. 50; *Sider* v. *General Electric Co.*, *supra; Fitzgerald* v. *Edison Electric Illuminating Co.*, 207 Pa. 118, 122; 56 Atl. 350; *Cooper* v. *Shore Electric Co.*, *supra; Shawnee* v. *Cheek*, 41 Okla. 227, 252; 137 Pac. 724; *Frazier* v. *Georgia R. R. & Banking Co.*, 101 Ga. 77, 78; 28 S. E. 662 (semble); *Kentucky Utilities Co.* v. *McCarty's Admr.*, 169 Ky. 38, 46; 183 S. W. 237; *Neill* v. *Wilson*, 146 N. C. 242; 59 S. E. 674; *Waldo* v. *Goodsell*, 33 Conn. 432; *Johnston* v. *Bay State St. Ry. Co.*, 222 Mass. 583, 584; 111 N. E. 91; *De Marco* v. *Pease*, 253 Mass. 499, 508; 149 N. E. 208.

[19] *Union Steamboat Co.* v. *Chaffin's Admrs.*, 204 Fed. 412, 417; *The City of Rome*, 48 F. (2d) 333, 341, 342.

[20] *Meekin* v. *Brooklyn Heights R. Co.*, *supra*, p. 153.

[21] Williams, Executors and Administrators, 7th Am. ed., Vol. 2, pp. 4, 5; *Chamberlain* v. *Williamson*, 2 M. & S. 408, 412; *Leggott* v. *Great Northern Ry. Co.*, (1876) 1 Q. B. D. 599, 606; *Pulling* v. *Great Eastern Ry. Co.*, (1882) 9 Q. B. D. 110.

[22] *Chamberlain* v. *Williamson*, *supra*, p. 415; *Whitford* v. *Panama R. Co.*, 23 N. Y. 465, 476.

member that under the death statutes an independent cause of action is created in favor of the beneficiaries for their pecuniary damages, the conclusion is not difficult that the cause of action once accrued is not divested or extinguished by the death of one or more of the beneficiaries thereafter, but survives, like a cause of action for injury to a property right or interest, to the extent that the estate of the deceased beneficiary is proved to be impaired. To that extent, if no farther, a new property right or interest, or one analogous thereto, has been brought into being through legislative action. True, there are decisions under the death statutes of some states that teach a different doctrine, refusing to permit a recovery by the administrator after the beneficiary has died,[23] though the ruling has been made at times with scant discussion of the problem. Indeed, the problem now before us was not always presented to the attention of the court, for at times the death of the beneficiary followed hard upon the death of the person negligently killed or the claim was not urged that there had been damage in the interval. We think the cases favoring survival within the limits already indicated are supported by preponderant authority and also by the better reason.

[23] *Schmidt* v. *Menasha Woodenware Co.*, 99 Wis. 300; 74 N. W. 797; *Gilkeson* v. *Missouri Pacific Ry. Co.*, 222 Mo. 173; 121 S. W. 138; *Railroad* v. *Bean*, 94 Tenn. 388; 29 S. W. 370; *Harvey* v. *Baltimore & Ohio R. Co.*, 70 Md. 319; 17 Atl. 88; *Doyle* v. *Railroad Co.*, 81 Ohio St. 184; 90 N. E. 165; *Huberwald* v. *Orleans R. Co.*, 50 La. Ann. 477; 23 So. 474; *Taylor* v. *Western Pacific R. Co.*, 45 Cal. 323; *Wabash R. Co.* v. *Gretzinger*, 182 Ind. 155; 104 N. E. 69 (semble). Cf. *Sanders' Admx.* v. *Louisville & N. R. Co.*, 111 Fed. 708, 709; *McHugh* v. *Grand Trunk Ry. Co.*, [1901] 2 Ont. L. Rep. 600.

At times state decisions have drawn a distinction between the death of a beneficiary before and during suit. See, e. g., *Frazier* v. *Georgia R. R. & Banking Co.*, *supra*. The validity of that distinction is irrelevant to the case at hand. Cf. however, *Chicago, B. & Q. R. Co.* v. *Wells-Dickey Trust Co.*, 275 U. S. 161, 163; *Reading Co.* v. *Koons*, 271 U. S. 58.

Nothing at war with that conclusion will be found in our opinion in *Chicago, Burlington & Quincy R. Co.* v. *Wells-Dickey Trust Co.*, 275 U. S. 161, on which the court below leant heavily in deciding as it did. The suit was under the Employers' Liability Act which gives a cause of action (a) to the widow or children; (b) to the parents if no widow or children survive; or (c) to dependent next of kin, if there be no surviving widow, child or parent. A mother survived the employee, but died before an administrator was appointed. The holding was that the beneficial interest did not shift upon her death to members of class (c). "The failure to bring the action in the mother's lifetime did not result in creating a new cause of action after her death for the benefit of the sister." 275 U. S. at p. 164.[24] The question was not raised whether the damages, if any, suffered by the mother between the son's death and her own would have been recoverable, if proved. Nor is the case at hand affected by statutes, invoked by the respondent, which regulate the continuance of a proceeding in a court of the United States by the substitution of the executor or administrator of a party dying while the suit is pending. 28 U. S. C. § 778. The present claimant is not the administrator of the deceased beneficiary, but an administrator *de bonis non* who has succeeded to the office of the original administrator.[25] The order substituting him as a party was made without objection, and he continued in the suit thereafter as if he had filed a claim anew.

Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be

[24] Cf. *Wilcox* v. *Bierd*, 330 Ill. 571; *Rogers* v. *Fort Worth & D. C. Ry. Co.*, 91 S. W. (2d) 458 (Tex. Civ. App.).

[25] Cf. *Thompson* v. *United States*, 103 U. S. 480, 483.

remedied.[26] There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. "The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed."[27] Its intimation is clear enough in the statutes now before us that their effects shall not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has had its day.[28]

The decree should be reversed and the cause remanded for further proceedings in accord with this opinion.

*Reversed.*

---

[26] Cf. *The Arizona* v. *Anelich,* 298 U. S. 110, 123; *Beadle* v. *Spencer,* 298 U. S. 124, 128.

[27] Per Holmes, Circuit Justice, in *Johnson* v. *United States,* 163 Fed. 30, 32. Cf. *Gooch* v. *Oregon Short Line R. Co.,* 258 U. S. 22, 24; *South & Central American Commercial Co.* v. *Panama R. Co.,* 237 N. Y., 287, 291; 142 N. E. 666.

[28] *The Arizona* v. *Anelich, supra; Cortes* v. *Baltimore Insular Line, supra; Warner* v. *Goltra,* 293 U. S. 155.