### HICKMAN v. TAYLOR et al.
### No. 9579.

United States Court of Appeals
Third Circuit.

Argued June 25, 1948.

Decided Oct. 18, 1948.

328

Abraham E. Freedman, of Philadelphia, Pa. (Freedman, Landy & Lorry, of Philadelphia, Pa., on the brief), for appellant.

Samuel B. Fortenbaugh, Jr., of Philadelphia, Pa. (Robert L. Kunzig, Benjamin F. Stahl, Jr., and Clark, Brown, McCown, Fortenbaugh & Young, all of Philadelphia, Pa., on the brief), for John M. Taylor and George H. Anderson, appellees.

Howard Burtt, of Philadelphia, Pa. (Guckes, Shrader & Burtt, of Philadelphia, Pa., on the brief), for Baltimore & O. R. Co., appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

A wooden float owned by defendant Baltimore and Ohio Railroad Company ("B. & O.") was being towed across the Delaware River toward the New Jersey shore by two tugs belonging to defendant Taylor and Anderson Towing and Lighterage Company ("Taylor"). The float, for reasons unexplained, sank during this operation and became stuck in the river bed. After a conference between officials of Taylor and B. & O., it was decided that one of the tugs would remain in the vicinity of the sunken float all night.

Shortly before 6 a. m. of the following day, the float apparently freed itself and came to the surface. In so doing, the float struck the tug, which soon thereafter turned on its starboard side and sank. One Norman E. Hickman, a crew member of the tug, was drowned in the mishap.

Plaintiff herein, Hickman's administrator, sued Taylor and B. & O. Prior to trial, a question concerning the scope of discovery procedure under the Federal Rules of Civil Procedure, 28 U.S.C.A., was passed upon by us, 3 Cir., 1945, 153 F.2d 212, and by the Supreme Court, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

The case then was heard on the merits by the district court without a jury. The court below found that the employees of Taylor had been negligent in two respects: (a) for permitting the "tug to lie throughout the night moored only by the towline to the sunken carfloat," and (b) for failure to sound a general alarm during the interval between the striking of the tug and its sinking. As to B. & O., the district judge found that plaintiff had not met his burden of proving that the B. & O. representative "knew or had any reason to know the manner in which the job [i. e., using the tug 'to warn river traffic of the sunken float'] would be done"; and, since Taylor was an independent contractor, B. & O. could be held liable only if B. & O. had deliberately participated in a plan which it should have known was "tortious, dangerous, negligent, or likely to cause harm."

Accordingly, plaintiff was awarded judgment against Taylor in the amount of $5,000, of which $4,000 was the pecuniary loss sustained by the beneficiaries through Hickman's death, and $1,000 was compensation for pain and suffering; and B. & O. was given judgment in its favor. 1947, 75 F. Supp. 528, 530. The instant appeal has been taken against both defendants.

■ In so far as the judgment against Taylor is concerned, plaintiff asserts that he is also entitled to recover the economic value of Hickman's life for the period of Hickman's probable life expectancy. In support of this contention, plaintiff has presented an interesting analysis of the history and theory of survival statutes, with particular reference to Section 33 of the Merchant Marine Act of 1920, 46 U.S.C.A. § 688, upon which he bases his claim. He recognizes that statements in St. Louis, Iron Mountain & S. Ry. v. Craft, 1915, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160, are contrary to his position, but urges that these remarks are dicta which should yield to the rationale espoused in decisions construing many of the state death statutes. Our examination of that state legislation, however, reveals significant differences in wording from that to be found in the provisions of the Employers' Liability Act, 45 U.S.C.A. §§ 51 and 59, which govern the issue at bar. Were the question of the interpretation of the federal survival statutes one of first impression, the approach of the state courts would be useful in determining the issue before us. We cannot escape the fact, however, that the St. Louis case, applying the very statutes here involved, pointedly excludes life value from the amount of recovery; and the St. Louis case uniformly has been accepted as a correct delineation of the law promulgated in those federal statutes. See Van Beeck v. Sabine Towing Co., 1937, 300 U.S. 342, 347, 349, 57 S.Ct. 452, 81 L.Ed. 685; Lukenbach S. S. Co. v. Campbell, 9 Cir., 1925, 8 F.2d 223, 224; Chesapeake & O. R. Co. v. Mears, 4 Cir., 1933, 64 F.2d 291, 294, 295 and Id., 4 Cir., 1934, 70 F.2d 490, certiorari denied 1934, 293 U.S. 557, 55 S.Ct. 69, 79 L.Ed. 659; Chicago, B. & Q. R. Co. v. Kelley, 8 Cir., 1934, 74 F.2d 80, 84; and Thompson v. Camp, 6 Cir., 1947, 163 F.2d 396, 403, certiorari denied 1948, 333 U.S. 831, 68 S.Ct. 459. Any change in what has come to be regarded as a fixed rule of interpretation would now be a matter for legislative consideration.

■ Plaintiff also asserts that B. & O. should have been found liable on either of two grounds: (a) because it failed to mark the sunken float with a lighted buoy after dark, and (b) because it "induced" Taylor to place the tug in stand-by status. As to the latter, we need only point to the comprehensive discussion contained in the opinion of the district judge, 75 F.Supp. at pages 531, 532. The B. & O. representative had testified that the suggestion to leave a tug on guard was made by Taylor, an independent contractor, and that he, the B. & O. official, had merely agreed to the plan. We have no basis for discrediting this testimony, which the trial judge expressly stated he believed. From such facts it is impossible to draw the conclusion that B. & O. had so participated in the evolution and effectuation of a plan "not in itself obviously dangerous and agreed to as proper by two experienced seamen," as to be liable under the theory of Section 876 of the Restatement, Torts (1939).

■ We may assume arguendo that the failure of B. & O. to mark the submerged float with a lighted lantern was a violation of Section 15 of the Act of March 3, 1899, 33 U.S.C.A. § 409. The question still remains whether such failure measurably increased the risk that the float would collide with the tug. We have already noted that the district judge had competent evidence from which he could and did find that the B. & O. representative did not "know or have reason to know that it [making use of the tug to warn river traffic of the sunken float] would be done by allowing the tug to swing free on the hawser attached to the float." Had the tug dropped anchor at a safe distance away from the float, had the hawser been extended or replaced in part by a lighter line, the foreseeable emergence of the float would not have resulted in impact with the

tug, regardless of whether or not the float was marked. The failure of B. & O. to comply with the statute, therefore, constituted a non-performance of its duty of care to other river traffic, but not to the tug which needed no marker to advise its occupants of the whereabouts of the float. The purpose of the statute, as applied to this case, was the protection of other vessels plying the waters. See Restatement, Torts (1934) § 286; and cf. Petition of Anthony O'Boyle, Inc., 2 Cir., 1947, 161 F.2d 966. As was aptly explained in the opinion of the court below, the misdeeds which brought about this unfortunate inci-· dent were attributable solely to the faulty seamanship of the operators of the tug. Without condoning any dereliction of duty on the part of B. & O. in failing to comply with the statute, therefore, we are nevertheless constrained to agree with the court below that B. & O. cannot be held liable for Hickman's drowning.

For the reasons stated, the orders of the district court will be affirmed.