CANDELARIA TRAVIESO RIVERA, Plaintiff, *v*. RUBÉN DEL TORO RODRÍGUEZ and ROYAL INDEMNITY INSURANCE CO., Defendants. NEMESIO TRAVIESO SEPÚLVEDA, Intervener and Appellant.

No. 10797. Argued April 21, 1953.—Decided May 29, 1953.

942

*E. Díaz Santana, A. Frías Márquez* and *José López del Valle* for appellant. *F. Fernández Cuyar* for plaintiff. *Pedro N. Colberg* for defendant.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Candelaria Travieso Rivera, an acknowledged natural daughter of Juan Travieso Arce, filed a complaint for damages against Rubén del Toro Rodríguez and the Royal Indemnity Insurance Co., in the former District Court of Puerto Rico alleging that a vehicle belonging to defendant Rodríguez negligently ran over Juan Travieso Arce, causing him serious injuries as a result of which he died on April 23, 1950. In their answer, defendants denied negligence and alleged, on the contrary, contributory negligence on the part of Juan Travieso Arce. After the answer was filed, Nemesio Travieso Sepúlveda filed a petition for intervention alleging that he was the legitimate father of Juan Travieso Arce and that, as such, he, like plaintiff, was also the forced heir of the decedent. The defendants filed a motion to dismiss the petition for intervention and finally the trial court entered an order and judgment dismissing the petition for intervention. The action of the lower court was based on the theory that since Juan Travieso Arce had a recognized natural daughter, she was the sole heir of the decedent and thus the legitimate father was not entitled to any hereditary rights, especially, in view of the fact that it was a testate inheritance. The trial court based its decision in *Sánchez v. District Court*, 69 P.R.R. 457.

The intervener has appealed to this Court assigning the following errors:

"First: The trial court erred in failing to recognize that there was preterition of the intervener in the will executed by Juan Travieso Arce in favor of his wife and his recognized natural daughter, Candelaria Travieso Rivera.

"Second: Said court likewise erred in failing to recognize

as a forced heir, the legitimate ascendant and father of the decedent relying exclusively on § 736 of the Civil Code as amended in 1947 without applying or connecting it with §§ 738 and 768 which regulate said right.

"Third: The lower court likewise erred in failing to recognize the case as one of intestate succession upon declaring that intervener-appellant could not be considered as a forced heir."

██ From the allegations and a stipulation signed by the parties it appears that the decedent Juan Travieso Arce had executed an open will on April 28, 1936, instituting as his sole and universal heirs his wife Celestina Robles, who died on February 16, 1943, that is, prior to the death of Travieso Arce, and his recognized natural daughter Candelaria Travieso Rivera, and that when Travieso Arce died his legitimate father Nemesio Travieso Sepúlveda was living.

The question directly raised by the parties and decided by the trial court was whether in the case of a testate inheritance the recognized natural daughter is the only forced heir of the victim of the accident, or whether the legitimate father is also a forced heir together with the recognized natural daughter. As we shall see hereinafter, the solution of that problem is not controlling herein, inasmuch as a parent is entitled to claim damages for the death of his child, independently of whether or not he is a forced heir in a testate inheritance, under the provisions of the Civil Code. At any rate, we shall first examine that question.

In *Sánchez* v. *District Court, supra,* it was held, incidentally, that if a will was executed the legitimate parent is not a forced heir, and his hereditary rights as such are excluded by the existence of a natural daughter, under § 736 of the Civil Code, as amended by Act No. 447 of May 14, 1947 (Sess. Laws, p. 944). We ratify that doctrine, although it is not applicable to this case.

Appellant alleges that the will was executed on April 28, 1936 and that, according to the law in force at said date the

legitimate parents were forced heirs together with the natural children. However, the ancestor died on April 23, 1950, when Act No. 447 of 1947 was already in force and it excluded, in a testate inheritance, the hereditary rights of the legitimate parents when there were natural children. The applicable law as to the juridical effectiveness of a will and as to the content, scope and extent of the hereditary rights of the alleged successors is that which prevailed when the ancestor died, and not the one prevailing when the will was executed. The legal situation existing at the time of the death of the ancestor is determinative of the hereditary rights. Sections 603, 610, 687 of the Civil Code; 6 Manresa, 6th Ed. pp. 62, 309, 312, 346, 347; 14 Scaevola 426, 4th Ed.; Judgments of the Supreme Court of Spain of May 6, 1927, of April 18, 1934 and of March 20, 1916; 129 A.L.R. 859–873; 66 A.L.R. 1069, 1071; 57 Am. Jur. 660, § 1021.

The court *a quo* held that Nemesio Travieso Sepúlveda was not entitled to claim damages for the death of his son inasmuch as if there is a natural daughter he is not an heir of his son, under *Sánchez* v. *District Court, supra*, and can not file suit under the provisions of Rule 17 (*k*) of our Rules of Civil Procedure, which provides:

"When the death of a person not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding subdivision, such damages may be given as under all the circumstances of the case, may be just."

Rule 17 (*k*) coincides exactly with the provisions of § 61 of our Code of Civil Procedure, which, in turn reproduces § 377 of the Code of Civil Procedure of California.

Notwithstanding the provisions of Rule 17 (*k*), appellant Nemesio Travieso Sepúlveda, as legitimate father of the decedent, is entitled to file a complaint for damages which he suffered by the death of his son, even when there is a recog-

nized natural daughter of the victim of the accident, for the following reasons, which we shall set forth briefly, before we adequately discuss this problem:

(1) The original source for a claim for damages for death is § 1802 of our Civil Code, and not Rule 17 (*k*) or § 61 of the Code of Civil Procedure. *Orta* v. *Porto Rico Railway, Lt. & P. Co.,* 36 P.R.R. 668. In order that a claimant may have a valid cause of action for said reason, technically he need not be an heir, it being enough if he is the father of the victim, (Judgment of the Supreme Court of Spain of December 20, 1930) and that he has suffered damages due to his condition and relation as parent, considering the destruction of his actual or potential right to receive support and the permanent suspension of the prospective benefits that he might have received from his son. *Cf. Ruberté* v. *American R. R.,* 52 P.R.R. 457; *López* v. *Rexach,* 58 P.R.R. 145; *Díaz* v. *Water Resources Authority,* 71 P.R.R. 872.

Even within the purview of Rule 17 (*k*), that is, assuming that we place ourselves in the sphere of its applicability, said Rule does not refer to "heirs" in its technical sense of persons entitled to inherit under a specific legal situation, or of persons to whom the whole or part of an estate or of the patrimony which belongs to the ancestor is transmitted. Under Rule 17 (*k*), as well as under § 1802 of the Civil Code the right of action for death is not part of the hereditary patrimony of the ancestor and it is not transmitted according to the law of successions. It is a direct and personal action to the claimant accruing from damages suffered by himself, the claimant being personally affected, without having to invoke any hereditary right. We are not dealing with a right of action acquired from the deceased ancestor, since said right of action was not part of his property or of his hereditary estate. We are dealing with a personal right and not a hereditary right, that is, the action is exercised *"jure propio"* and not *"jure hereditatis."* Colombo, *Culpa Aquiliana,* p. 708, 713 *et seq.* No right of action was trans-

mitted upon the decease of the ancestor, since said right was his own personal right and it abated by his death. What Rule 17($k$) does is to point out a class or category of persons whom are labelled "heirs" in the general and not in the technical sense, said category and label being indicative of a group of persons who by virtue of their relation with the ancestor presumptively or probably have suffered or do suffer damages by the death of another. From the point of view of the projections and purposes which prompted the approval of Rule 17($k$) and of our § 61 and of § 377 of California, the father must be regarded as one of the "heirs" to which said Rule refers.

■ (3) Section 736 of our Civil Code as amended by Act No. 447 of 1947, and as construed by this Court in *Sánchez* v. *District Court, supra*, refers to the identity of the forced heirs who are entitled to a part of the property which constitutes the hereditary mass, where there is a will, said part being the legal portion under § 735. What is meant, in brief, is that a deceased may not, by a will, exclude certain relatives from a specific share in the inheritance. Section 736 presupposes a specific distribution, imposed by law, of part of the hereditary property. Its scope is limited to that property which forms or has formed part of the ancestor's patrimony. The right of action for death is not part of that patrimony, is not part of the property which constitutes the estate, and therefore, § 736 is not applicable to that cause of action which is not subject to the rules of forced distribution. Consequently, *Sánchez* v. *District Court, supra*, is not in point herein.

The foregoing could be sufficient for a determination of this case, but we feel constrained to delve into this problem, which is a notable example of the mutual reaction of two systems of law in our environment, the Civil and the Common Law. We shall examine the prevailing rules under both systems as to the nature of the cause of action for wrongful death.

CIVIL LAW

■■■ The authorities are in conflict as to whether the Roman Law admitted a claim for damages for the death of another person. Justice Cardozo, in *Van Beeck* v. *Sabine Towing Co.*, 300 U. S. 342, 344, 345, indicates that ancient Romans enforced the principles that "no action of an essentially penal character could be commenced after the death of the person responsible for the injury" (which is different from the problem herein), that vengeance, though permissible during life, was not to "reach beyond the grave," and that no money value could be put on the life of a freeman. However, a more adequate evidence shows that under the Aquilian Law, precursor of the doctrine of Civil law relating to damages, and under the Digests, an action in damages for the death of a relative or of a person on whom the survivor is dependent was in order. 6 Tulane L. Rev. 201, 212: *The Recovery of Damages for Wrongful Death at Common Law*, at Civil Law and in Louisiana; Colombo *Culpa Aquiliana*, 709, 710. The Codes of Civil Law have patterned most of its rules from the modern Roman law and not from the ancient law, that is, from the *usus modernus pandectarum*, which authorized said claim. 38 Harv. L. Rev. 499, 502, note 31. Said opinion was adopted by Grotius and Pufendorf, writers on natural law. *Manzanares* v. *Moretta*, 38 *Jurisprudencia Filipina* 874, 881; 38 Harv. L. Rev. 502, note 32.

Section 1382 of the Code Napoleon, a true model of § 1802 of our Civil Code stated that "Every act whatever of man that causes damage to another, obliges him, by whose fault it happened, to repair it." The French courts have interpreted said Section very broadly and in a general way. *Colombo, op. cit.*, p. 726. *Rolland* v. *Goose*, decided by the Court of Cassation, the highest court in France, is probably the best illustration of the interpretation placed upon § 1382 of the Code Napoleon. 6 Tulane L. Rev. 201, 215. It was the case of a widow's claim for the death of her husband. The Court of Cassation established the right of a person to

recover, under said Code, damages suffered due to the negligent or wrongful killing of another.

At French law, anyone to whom the death of the victim causes moral or pecuniary personal damage, may recover, whether he be heir or not, and this action is independent of the one which the deceased could have had, and the damage must be exclusively appreciated in the person of the claimant and not in the deceased. Planiol-Ripert, *Derecho Civil Francés*, Vol. 6, p. 897, § 658; 6 Tulane L. Rev. 216.

Section 1902 of the Civil Code of Spain, identical with our § 1802, provides that a person who by an act or omission causes damage to another when there is cause or negligence shall be obliged to repair the damage so done. The judgment of the Supreme Court of Spain of December 20, 1930, involved a claim of damages brought by the widow and the children of a person who died in an automobile accident as a result of negligence on the part of the defendant. The allegation of the defendants to the effect that the plaintiffs had not established their character as heirs was rejected and it was stated that there was a valid cause of action in favor of the claimants. The following was stated:

"Furthermore, the right to recover claimed by the respondents did not spring from their dead father, but from their condition of wife and children of the decedent, inasmuch as the latter, upon suddenly dying in the afternoon of June 14, 1925 after being hit by a truck, did not come to possess, even for a second, the right to recover which he was supposed to transmit to his descendants. It was actually that act which gave origin to the action for recovery which the latter filed, that is why they had no need to prove their condition of heirs which they failed to establish in the complaint, but merely that of children and wife of Domingo González Martín, the decedent, and as such, they were entitled to the right which they invoked and which was not otherwise denied, it being evident that §§ 807 and 658 of the Civil Code have not been violated, and much less §§ 503 and 504 of the Code of Civil Procedure, which because of their personal character can not be invoked to support an appeal to the Supreme Court for a violation of the law, as established by the jurisprudence of this Court."

The judgment of April 8, 1936 of the Supreme Court of Spain involved a collision of trains which caused the death of three citizens of the United States. Under § 1902, it was held that the administrator of the inheritance of those three citizens had a right of action for damages, but that in order to "obtain the recovery for damages it is necessary to prove that the claimant actually suffered damages" since, as held, the right to recover compensation for damages does not partake of a patrimonial nature, nor is it part of the hereditary estate of the victim for inheritance purposes.

Medina and Marañón, in their work *Leyes Civiles de España*, cite at p. 517 two judgments of the Supreme Court of Spain of February 2, 1940 and December 24, 1941, which hold that the compensation for damages which are not patrimonial, such as those arising from the loss of life, may not rest in the result of an objective proof nor may it be reduced to material laws of causality, corresponding to the judge the evaluation of the damage, with prudence, according to the circumstances of each case and pursuant to the requirements of equity. See also Rodríguez Navarro, *Doctrina Civil del Tribunal Supremo*, Vol. 4, p. 5887 and judgment of May 19, 1934 of the same court.

The same provision appearing in § 1902 of the Civil Code of Spain appears in the codes of the Latin-American countries, the majority of which adopted said provision from the Code Napoleon, with the same construction given to it in France. 38 Harv. L. Rev. 500.

In Argentina §§ 1109 and 1079 of the Civil Code provide that anybody who performs an action which by his fault and negligence causes damages to another is bound to compensate, not only the person directly injured but also any other person who although indirectly, suffered damages. Construing said provision the federal jurisprudence and "the scholars of Law" in Argentina recognize that "the civil action to seek compensation for damages caused by an offense or by wrongful actions is not one which depends on the heirs" and that it is

a direct and personal action to the injured parties, without the latter being bound to establish their character as heirs, it being enough, in some cases, to establish the degree of kinship. Colombo, *Op. Cit.*, pp. 712, 713, 724. According to Colombo's opinion "little it matters, therefore, whether or not the injured party is a relative in a degree of succession or a forced heir of the decedent. From the moment that he is able to prove the damage suffered, there is no reason to refuse compensation." (p. 728.)

In *Panamá R. R. Co.* v. *Rock*, 266 U. S. 209, the Supreme Court of the United States, (Justices Taft, MacKenna, Holmes and Brandeis dissenting), held that an action for damages could not be maintained in the Canal Zone for the death of another person. Said opinion has been harshly criticized, since the National Supreme Court ignored the fact that Panama had a Civil Code, whose § 2341 is substantially identical with the Sections which we have cited from the Code Napoleon and from the Spanish Code, under which it is clear that said action lies. 38 Harv. L. Rev. 499; 6 Tulane L. Rev. 217, 218.

In Louisiana, § 2294 of the Civil Code provided, as did the corresponding Section of the Code Napoleon, that every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it. However in *Hubgh* v. *Ry.*, 54 Am. Dec. 565, it was held that said statute did not authorize recovery for the death of another. That decision has been also harshly attacked and considered wrong, because it ignored the interpretation given in France to that same Section and dispenses with the basic rules of the Civil Law. 6 Tulane L. Rev. 218 *et seq.*

This Court acted correctly, therefore, in *Orta* v. *Porto Rico Railway, Lt. & P. Co.*, *supra*, upon deciding that § 1802 of our Civil Code is the basic fountain for the action of damages for the death of a person and in holding in *Ruberté* v. *American R. R. Co.*, *supra; López* v. *Rexach*, *supra*, and *Díaz* v. *Water Resources Authority*, *supra*, that said claim

does not arise necessarily from a hereditary right. Those principles coincide with the postulates of the Civil Law.

## COMMON LAW

■ At Common Law, a civil action for damages suffered by the wrongful death of another does not lie, in the absence of a specific statute authorizing such an action. The old common law maxim, "*actio personalis moritur cum persona,*" meaning that the right of action for a tortious wrong is personal, and is put to an end by the death of either the wronged party or the wrongdoer was applicable. The underlying reasons for this doctrine are the following (6 Tulane L. Rev. 203; *Van Beeck* v. *Sabine Towing Co., supra;* 25 C.J.S. 1073, 1074.) :

(1) Any tort was considered so purely personal that an action in the courts for damages was merely a legal method of imposing the vengeance of the wronged party upon the wrongdoer; so that when one of these parties died, this personal imposition of vengeance was impossible.

(2) The act of causing death is criminally punishable and the only party interested in taking revenge is the State since the offense is against the whole community and not merely against a specific or particular person. The civil wrong is merged with the felony, under this old fashioned and frivolous opinion.

(3) No money value can be given to the life of a person.

The technique of the Common Law was to the effect that the prevailing legal principles were those adopted by the courts, unless there was a specific statute to the contrary. A statute was necessary in order to set aside the general rule. The statute was considered as an exception to the rule and, therefore, it was strictly construed. The prohibitory rule of actions for death adopted by the courts and the text writers, was superficial, illogical, anachronic and devoid of social utility. It was contrary to the environmental reality and served as a barrier to the satisfaction of social

needs. The industrial revolution brought about, as a sequence, a multiplicity of accidents and deaths as a social punishment for the economic progress. The approval of statutes eliminating such an archaic and obsolete rule was imperative. In 1846 Lord Campbell's Act creating a civil right of action in cases of the wrongful death benefiting the spouse, parents, or children of the decedent and granting a fair compensation which would be in proportion with the damages suffered, was approved in England. The English courts construed said statute to the effect that the cause of action for death was not inherited but that it was a direct and personal action to the wronged party. Those courts specifically held that a father could sue for the death of his child, not as an heir, but by virtue of his legal interest in mere expectation of obtaining future or potential pecuniary benefits, or in the form of a continuation of enjoying the company and service of his child. Cases of *Franklin* v. *The South Eastern Ry.*, 157 Eng. Rep. 448 and *Dalton* v. *The South Eastern Ry. Co.*, 140 Eng. Rep. 1098, both decided in 1858 and both cited and discussed in 6 Tulane L. Rev. 207, where it is stated that in so construing Lord Campbell's Act, the courts of England looked beyond the British Isles to the Continent and adopted the theory of the Civil Law.

In the United States the great majority of the states adopted statutes similar to Lord Campbell's Act. (See statutes discussed in 44 Harv. L. Rev. 980.) California approved § 377 of the Code of Civil Procedure, which corresponds to § 61 of ours, from which Rule 17(k) was taken, identical with § 377 of California, which originally corresponded to Lord Campbell' Act. 25 Cal. L. Rev. 170. Under said Section the courts of California have held that the action allowed by said Section is a new cause of action, different from the one which the wronged person would have had if he had survived; that it is a direct and personal action to the claimant and not the transfer of the right of action by inheritance; that the damages recovered are different from

the ones which the decedent would have obtained, and do not constitute any part of the estate of the deceased; that it is a new right and not a remedy which hinges on a former right of the "estate"; it is a new action and not the continuation of a former hereditary action. *Munro* v. *Ddredging etc. Co.*, 84 Cal. 515; *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407; *Estate of Riccomi*, 185 Cal. 458; *Marks* v. *Reissinger*, 169 Pac. 243. It is a new action based on the act causing the death, and the damages recovered are for the benefit of the heirs. *Secrest* v. *Pacific Electric Ry. Co.*, 141 P. 2d 747; *Gregory* v. *Southern Pac. Co.*, 157 Fed. 113. Clearly, they can be no part of the assets of the deceased. *Earley* v. *Pacific Electric Ry. Co.*, 176 Cal. 79.

The courts of California have construed § 377 to the effect that it gives a right of action to the father of a child who is of age and who dies due to the fault or negligence of a defendant, if he shows that he has received pecuniary loss, but it is not necessary that said damages be definitely and exactly established. It is sufficient that the father show that he had a legal right to support, and that he had a reasonable expectation of pecuniary advantage in the future, from the continued life of the deceased, and the mere relationship of the father to the child, together with the legal and potential right to receive pecuniary help is sufficient. *Hillebrand* v. *Standard Biscuit Co.*, 139 Cal. 233; *Griffey* v. *Pacific Electric Ry. Co.*, 209 Pac. 45. The prevailing rule in the United States under statutes similar to that of Lord Campbell is to the same effect, it being established that the loss of a reasonable expectancy of pecuniary gain by the beneficiary, had the wronged person continued living, is essential in an action for damages; that the fact in itself that there exists a right to support is sufficient to maintain the action, even if support was not being actually received at the time of death, since that right gives origin to a reasonable expectancy of pecuniary gain and that the mere relationship of beneficiaries to decedent, or a certain degree of kinship, may give rise to

the presumption that the death causes a loss of a reasonable · expectancy of pecuniary benefits.    25 C.J.S. 1095, § 26.

In connection with the term "heirs" used in § 377 and in our Rule 17(*k*), the Supreme Court of California, in *Redfield* v. *Oakland etc. Co.*, 110 Cal. 277, held that upon referring to the heirs § 377 did not intend to limit the damages recoverable to the community relation in which a person, under a statute, is considered as the sole heir of the decedent, and it is held that the word "heirs" has been used in its common-law sense and denotes those who are capable of inheriting from the deceased person generally, without reference to the distribution of community property.    It is stated that the damages allowed to the "heirs" had no existence prior to the death of the victim and the right to recover them is not based upon the supposition that they are a part of the estate, or passed to the plaintiff under the statutes relating to the succession or inheritance of property.

In *Fiske* v. *Wilkie*, 67 Cal. App. (2d) 440; 154 P. 2d 725, it is held that the word "heirs" as used in § 377 limits the right to recover to a class of persons who, due to their relationship with the decedent it is presumed that they will receive damages due to his death, being it stated that said claim does not refer to the damages suffered by the decedent, but by the claimaints personally.

However, in *Jolley* v. *Clemens*, 82 P. 2d 51, 62, it was held that where decedent left issue, the parents of the decedent would not be entitled to maintain an action under § 377 and under the laws of hereditary succession.    We disagree with such a strict construction of § 377 since it is incompatible with the concept accepted by the very courts of California as to that said cause of action does not accrue to the beneficiaries nor does it form part of the estate.    The vast majority of the courts in the United States support the theory that it creates a new cause of action, which is not included in the inheritance.    16 Am. Jur. 48.    In an annotation in L.R.A. 1916 E, p. 190, 191, *Statutory Right of Parents to Recover*

*for Death of Adult Child*, a conflict in the jurisprudence as to the inclusion of the father in the term "heirs" is pointed out, but it is stated that under statutes similar to those of Lord Campbell's, the parents should be included within that term.

### CONDITIONS IN PUERTO RICO

In California it was necessary to approve § 377 in order to establish an exception to the common law rule which forbade these actions for death. But Puerto Rico had no need to adopt that legislation, nor to add § 377 of the Code of California to our Code of Civil Procedure, by way of our § 61, nor was it necessary to adopt Rule 17 (*k*) since, under § 1802 of our Civil Code the actions for death were and are authorized in a broad and general way, including actions brought by relatives and by "heirs." As we have stated, under the common law system, a statute was necessary, as an exception to the general rule. But Puerto Rico has always been, as regards the substantive law, under the civil law system, under which an action for death was maintainable. The civil law technique is to include a great variety of situations in the wide scope of the Civil Law. Therefore, when § 61 of the Code of Civil Procedure and Rule 17 (*k*) were enforced in Puerto Rico, what actually took place was an artificial and unnecessary migration of provisions which were already included, broadly and lengthily, in our Civil Code. Particularly because of that reality, in view of the coexistence of Rule 17 (*k*) and § 1802, we may not, and can not reach the conclusion that Rule 17 (*k*) limits the scope of § 1802. *Orta* v. *Porto Rico Railway, Lt. & P. Co., supra; cf.* Colombo, *Op. Cit.*, p. 727 *et seq.* Contrariwise, construing both Sections jointly, as if they were *in pari materia* (25 C.J.S. 1085), both must be liberally construed, in opposition to the strict construction of the common law rule, in such a way that the specialty of Rule 17 (*k*) must be subordinated to the generality and wide scope of § 1802. We understand that it might be undesirable and unfair to allow a multiplicity of·

suits against a person by virtue of a single tortious act. But, on the one hand, said result is permitted by § 1802, which Section we should observe and accept, and, on the other hand all damages should be compensated.

Referring now to the case at bar, under § 1802, the father, intervener-appellant, is authorized to sue the person alleged to be responsible for the death of his child, even when there is a recognized natural daughter, since the parent-children relationship is such that the parent, when his son dies, loses his right to support, which § 143 of our Civil Code established. Even if the father did not actually and effectively receive support at the time of his child's death, he loses the reasonable expectancy of pecuniary benefits inherent in the parent-children relationship. The relationship in itself gave rise to a reasonable expectancy of support and future benefits. As stated in Colombo, *Op. Cit.*, p. 733, note 1047:

"Human life is a juridical property, an economic asset equal to any other asset and more worthy of protection than all of them, it is a social wealth destined to be, in the future, a source of benefits, above all in the humble homes, where the parents, when they lose their children suffer the loss of all the expenses and sacrifices, expressed in terms of money, in which they have incurred, in order to preserve the life of their children whom they contemplate with well-founded expectation as their protection and support in old age."

We have spoken of economic values as to the loss of a child. But we do not ignore that the life of a child, from the point of view of love and affection has an incommensurable value which can not be objectively appraised. The judge must bear in mind all those elements when considering the damages, including the mental suffering of the parents. *Maldonado* v. *Porto Rico Drug Co.*, 31 P.R.R. 709; *Orta* v. *Porto Rico Railway, Lt. & P. Co.*, *supra*, at p. 674.

We have already seen that even under Rule 17 (*k*), the father may legally file suit in the case at bar, notwithstanding the existence of a recognized natural daughter, especially upon construing said Rule in the light of § 1802. But we

need not base our opinion in said Rule. Clearly, in our judgment, § 1802 of our Civil Code applies.

The judgment appealed from will be reversed and the case remanded to the court *a quo* for further proceedings not inconsistent with this opinion.

Mr. Justice Sifre concurs in the result.