Emma **HUTCHISON**, Administratrix of the Estate of Nathaneal Patrick Hutchison, deceased, Appellant,

v.

**PACIFIC-ATLANTIC STEAMSHIP CO.**, a corporation, Appellee.

No. 13852.

United States Court of Appeals Ninth Circuit.

Dec. 8, 1954.

Simpson & Wise, Long Beach, Cal., for appellant.

Lasher B. Gallagher, Los Angeles, Cal., and Sidney Wyse, Pasadena, Cal., for appellee.

Before MATHEWS and ORR, Circuit Judges and WIIG, District Judge.

ORR, Circuit Judge.

Appellant, alleging two causes of action, the first seeking recovery for the pain and suffering alleged to have been endured by her deceased husband; the second for pecuniary loss to appellant for the alleged wrongful death of deceased, brought an action in the district court under the provisions of the Jones Act, 46 U.S.C.A. § 688.

The trial was had before a jury. At the conclusion of the submission of the evidence the trial court instructed the jury to return a verdict in favor of the appellee on the first cause of action. The trial court was of the opinion that appellant had produced no substantial evidence of conscious pain and suffering on the part of the deceased. The jury returned a verdict in favor of appellee on the second cause of action.

Three specifications of error are set forth:

1. Misconduct of appellee's counsel;

2. Improper instructions to the jury;

3. Error in instructing the jury to return a verdict in favor of appellee on the first cause of action.

We consider the specifications of error in inverse order.

■ First, was there sufficient substantial evidence as to pain and suffering to require the submission of the question to the jury? In brief the facts are:

Hutchison, who had worked as a seaman aboard merchant vessels for seven years, secured employment in New York City on April 17, 1951, as an able-bodied seaman with deck maintenance duties aboard the S. S. Linford Victory, a vessel operated by appellee. On April 24th, in the port of Baltimore, at approximately 8:00 a. m., Hutchison and several other seamen were ordered to clean a lower 'tween-deck area. In descending to and ascending from this 'tween-deck area the men used an iron ladder adjacent to an open ventilator shaft. Hutchison worked at least part of the morning, but did not report back for work after lunch at 1:00 p. m. The men who had been working with him concluded that he had gone ashore to take a day off, as sailors were in the habit of doing. He did not report for work the next day, April 25th. When, on April 26th, he was again absent from duty, the chief mate telephoned the Baltimore police to inquire whether he was being held in custody. The police had no record of his being held. No other effort was made to ascertain his whereabouts. A search of the forecastle and the messroom was made but no general search of the ship was instituted because it was assumed that he had gone ashore. The Linfield Victory left Baltimore supposedly without him, arriving at Philadelphia on April 29th. On April 30th, six days after Hutchison's disappearance, his body was discovered by the chief electrician at the bottom of the ventilator shaft adjacent to the ladder leading to the 'tween-decks area where the men had worked on April 24th. The ventilator shaft was uncovered and unlighted.

The autopsy disclosed that his death was caused by a fractured skull and subdural hemorrhage.

The evidence as to whether the deceased underwent conscious pain and suffering was of necessity in the nature of expert opinion, which was in substance as follows:

Dr. Glauser, the coroner's physician who performed the autopsy, testified that in his opinion Hutchison died in less than an hour, if not instantly. Dr. Lynn, a urologist, and Dr. Cephalu, a pathologist, testified that in their opinion a conclusion as to the length of time Hutchison lived after his fall could not properly be based upon the theory relied on by Dr. Glauser. Dr. Cephalu testified that "he did not die instantly" and that "the period would probably be measured in hours". Dr. Dickerson, a neurologist, testified that: "This man lived for some time after he was injured * * *. How long that was I could not say." Dr. Glauser gave as his opinion that Hutchison, because he was unconscious, did not suffer pain prior to his death. He stated that "with an injury like this it is very probable that he immediately lost consciousness even if he wasn't immediately killed". Dr. Cephalu testified that: "In my opinion there was a period of consciousness in which pain was suffered", and that "a man dying from a fracture of the skull with intracranial hemorrhage usually pursues a certain course. This course is, first, a period of unconsciousness followed by a lucid period in which he is conscious and generally knows what is going on, followed again by a lapsing unconsciousness".

In our view this evidence was sufficient to require submission to the jury of the cause of action for pain and suffering of the deceased. Cf. St. Louis, I. M. & S. R. Co. v. Craft, 1915, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160. Its weight and credibility was for the jury to consider.

■ Appellee asserts that in the event it be held that the evidence was sufficient to require submission of the first cause of action to the jury, the court was without jurisdiction to consider it because the Jones Act, under which the action is brought, makes no provision for the survival of a seaman's right of action for personal injuries.

The Jones Act, 46 U.S.C.A. § 688, provides in part as follows: "Any seaman who shall suffer personal injury in the course of his employment may * * * maintain an action for damages * * * and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." 45 U.S.C.A. § 59, dealing with railway employees, provides that: "Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative." In St. Louis, I. M. & S. R. Co. v. Craft, 1915, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160, it was held that under this provision a personal representative can recover compensation for the pain and suffering of the injured person while he lived, in addition to the compensation for loss of support of certain persons provided by 45 U.S.C.A. § 51. It is precisely these two elements of damage which the plaintiff attempts to recover in the two causes of action alleged in the complaint. In The Black Gull, 2 Cir., 1936, 82 F.2d 758, it was held that these two elements of damages are also recoverable under the Jones Act. See also, Van Beeck v. Sabine Towing Co., 1937, 300 U.S. 342, 346–347, 57 S.Ct. 452, 81 L.Ed. 685; Luckenbach S. S. Co. v. Campbell, 9 Cir., 1925, 8 F.2d 223, 224. We think that Congress in providing in the Jones Act that "all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply," manifestly intended to extend to the personal representatives of seamen the survival of rights of action for personal injury provided for by 45 U.S.C.A. § 59 in the case of railway employees.

■ As to the alleged error of the Court in giving certain instructions: Appellant made no objection to the instructions she now complains of. In fact, she informed the Court that she had no objections. She should not now be heard to complain.

The misconduct of counsel, as shown by the record in this case, has given us grave concern. It is of such a flagrant nature as to evince on the part of counsel an utter contempt for the trial court with no attempt to conceal it from the jury. Advantage was taken of a tolerant attitude which the trial court assumed and resulted in the trial getting out of hand. The entire atmosphere seems to have been such that the jury must have been confused as to the real issues they were called upon to try.

The trial court recognized the situation when, during a ruling on a motion for new trial, it said:

"This was one of the most difficult and trying cases on the nerves I have ever seen, either as counsel or court. I hope we won't have anything like it again * * * I have never had a trial in which there have been so many objections * * *. He was objecting practically to his own questions * * *. I don't think that there were ten per cent of the questions put by the plaintiff which were not objected to, or ten per cent of the answers by plaintiff's witnesses where there was not a motion to strike. There were at least five motions for a mistrial. The Court was berated and counsel was, and the jury was insulted * * *. It was not a good climate in which to try a case * * *."

We agree that it was not a good climate. Litigants are entitled to a more judicious and orderly procedure in the trial of their cases. The trial court stated: "I hope we won't have anything like it again." In the interest of the respect to which Federal Courts are entitled, we hope it will not be permitted to happen again.

The error in directing a verdict to the first cause of action and the atmosphere in which the trial was had permeated the entire case to the prejudice of appellant and warrants the conclusion that the appellant did not get a proper trial.

■ The question of lack of venue is raised by appellee. This contention boils down to a solution of whether ap-

pellee was doing business within the Southern District of California. 46 U.S.C.A. § 688, 28 U.S.C.A. § 1391(c); Phillips v. Pope & Talbot, Inc., D.C.S.D.N.Y.1952, 102 F.Supp. 51; Bagner v. Blidberg Rothchild Co., D.C.E.D.Pa.1949, 84 F.Supp. 973. A motion was made to dismiss on this ground. The record indicates that the Court heard the motion, took evidence, and thereafter denied the motion. Appellee did not see fit to have a copy of the evidence incorporated in the record. Such being the case we must conclude that the evidence before the Court supported its denial of the motion.

Reversed and remanded.